## SAN JACINTO OIL COMPANY v. TEXAS COMPANY.

Decided November 13, 1907.

**1.—Assignment of Error—Proposition not Germane.**

A proposition as to what the proper measure of damage should be in a given case, is not germane to an assignment of error which merely complains of the insufficiency of the evidence to establish market value.

**2.—Contract—Breach—Defense.**

In a suit for damages for breach of contract to deliver oil, the failure of plaintiff to make due demand for the oil can not be urged as a defense when the evidence shows that the defendant did not justify its refusal to deliver the oil at the time demand was made, on that ground.

**3.—Contract to Furnish Oil—Construction.**

Under a contract by an oil producing company to furnish a certain quantity of oil per month, the company would be bound to furnish said quantity whether its own wells produced the same or not. But, even if a proper construction of the contract limited the liability of the defendant to the quantity of oil produced by its own wells, the burden was on defendant to show that its wells did not produce so much oil, and in the absence of such proof it can not complain of a judgment against it.

Appeal from the District Court of Jefferson County. Tried below before Hon. W. H. Pope.

*A. B. Flanary, Chenault O'Brien* and *Chester & Da Ponte,* for appellants.

*A. D. Lipscomb,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee sued appellant to recover damages alleged to have arisen from a breach of contracts to deliver crude petroleum oil. The cause was tried by the court, without a jury, and judgment was rendered for appellee for $41,971.12.

We adopt the following conclusions of fact of the trial judge:

"On the 21st day of February, 1902, the Texas Fuel Co., by its president entered into a contract with the defendant oil company, as alleged in plaintiff's petition, whereby the defendant oil company obligated itself to deliver said Texas Fuel Company 20,000 barrels of oil per month for a period of twelve months beginning May, 1902, for which it was to be paid three cents per barrel, and thereafter, on the 22d day of February, 1902, another contract was entered into between said parties whereby the same amount of oil was to be delivered during the same period of time, and to be paid for at the same price. The said contracts are in substance and in form the same, except that the first mentioned contract provides that 'the lands upon which are located the wells from which the oil above sold is to be delivered is in block 37, Spindle Top Heights Addition,' whereas, the second of said contracts provides that 'the lands upon which are located the wells from which the oil above sold is to be delivered is in block 37, *San Jacinto No. 1, of Spindle Top Heights.*'

"After the execution of said contract the Texas Fuel Company transferred all of its assets and property, including these contracts, to the plaintiff, Texas Company, and that the plaintiff, Texas Company, assumed all of the liabilities of the said Texas Fuel Company, and became entitled to all of its assets. That the plaintiff, Texas Company, was a larger and more solvent company than the said Texas Fuel Company, and had greater facilities for handling the business it was engaged in than the said Texas Fuel Company.

"The defendant oil company through its president knew of said transfer, and ratified and approved the same, and dealt with said Texas Company and had considerable correspondence with said company with reference to its obligation under said contract with reference to the performance of said contract, and it did not question said transfer in any manner; but, on the other hand, confirmed the same, and treated and recognized the contract as being in force and subsisting between it and the plaintiff.

"The defendant did not deliver any oil at any time under the terms of said contract, although frequent demand was made upon it by the plaintiff to make delivery, the first of said demands being made on about the 1st of May, and the same having been made monthly thereafter up to November, 1902. I further find that in answer to each of these demands the defendant conceded its obligation to deliver the oil demanded until by letter of the 2d day of October, 1902, the defendant, through its president, wrote to the plaintiff as follows:

"'Answering yours of the 30th, we can not see any use in your demanding oil from our company when we have none. If you can tell us how to get 40,000 barrels of oil per month we will be greatly obliged to you.'

"After the appointment of Geo. W. Armstrong as receiver of the San Jacinto Oil Company, plaintiff made demand upon him for the delivery of the oil under the contract, and he declined to deliver it.

"There was no evidence as to the amount of oil produced in

May, but according to the testimony of W. E. Hawkins, the wells produced from artificial pressure from June 3 to June 29, 1902; well No. 1 produced 6,818 barrels; from July 1 to July 18, 4,043 barrels; from July 18 to October 18, 1902, 1,406 barrels; said wells produced no other oil from said 3d day of June to the 18th day of October. The defendant company used every reasonable effort to produce oil from said wells during said period of time. On the 3d day of October, 1902, the defendant company brought in a new well, which was begun in July, 1902, which is called well No. 3, that said well flowed of its own pressure from the 3d day of October, 1902, up to the 5th day of January, 1903, when it ceased. The evidence is insufficient to show what amount of oil was produced from the 3d day of October, 1902, to the date of the appointment of receiver from well No. 1, and what was produced from well No. 3, the oil from both of said wells having been run in the same storage tank. Nor is the testimony sufficient to show what the production for each day, or week or month amounted to during said period of time; but the total amount of oil produced from the 3d day of October, 1902, to the 18th day of January, 1903, amounts to 102,364 barrels, and the average daily production during said period of time would be 1,145 barrels, which is ascertained by dividing the number of days into the total amount of oil produced.

"The said company was placed in the hands of Geo. W. Armstrong as receiver by a court of competent jurisdiction on the 18th day of January, 1903. Said G. W. Armstrong continued to operate said well during the remainder of the term of said contract, and produced from well No. 1 3,000 barrels of oil between the 18th day of January and the 31st day of January and from Well No. 1 between the 4th day of March and the 16th day of March 6,000 barrels of oil, and from well No. 3 from the 16th day of April until the 1st day of May, 7,500 barrels, and all of said oil came from defendant's land in block 37.

"I find that the market price of oil during the month of May was 8c per barrel, during the month of June 3 1-3c; July, 3 1-3c; August, 17½c; September, 17½c; October, 17½c; November, 17½c; December, 40c; January, 52c; February, 55c; March, 73c; April, 75c."

The first assignment of error assails the judgment of the trial court because there was no evidence of the market value of oil within twenty-four hours of the time delivery thereof was demanded by appellee. The statement of the evidence of the different witnesses on the market value of oil from May, 1902, to May, 1903, is a complete answer to this assignment of error. There was sufficient testimony to sustain the finding of the trial judge as to market value. We will not entertain a proposition as to what the measure of damages should be in cases like the present, formulated under an assignment which merely complains of the insufficiency of the testimony to establish market value. The second assignment of error is only a reiteration of the first.

The third assignment of error attacks the judgment of the trial

court "because the testimony fails to show that plaintiff had demanded delivery of the oil within not less than 24 hours before the delivery was required to be made as provided by the contract." There was evidence of constant demands being made for the oil by appellee and it was refused, not because 24 hours notice had not been given, but because appellant had other contracts to fill and did not have the oil to spare. In May, 1902, appellant acknowledged receipt of a demand for oil and promised to notify the assignor of appellee when appellant was ready. On July 11, 1902, appellant wrote: "We do not see any immediate prospect of being able to deliver oil on our contract." On July 16, 1902, appellant wrote: "We expect to treat you fairly, but if you get any oil from us you will have to be patient." On July 19, 1902, appellant wrote: "Just as soon as possible we shall begin delivering oil to you and are making every effort to get ready to do so." On August 16, 1902, J. B. Cranfill, president of the San Jacinto Oil Company, appellant, wrote a letter to "Dear Brother Freeman," who was secretary of the Texas Company, appellee, wanting to borrow oil. On September 27, 1902, appellant wrote to appellee: "Answering yours of the 25th, our wells have not produced as much as 1,000 barrels of oil since they ceased to flow. One of our wells has turned out to be a salt water well. We do not see any chance of delivering you oil on our contract." On October 2, 1902, the following terse and emphatic letter was written by appellant to appellee: "Answering yours of the 30th, we can not see any use in your demanding oil from us when we have none. If you can tell us how to get 40,000 barrels of oil per month we will be greatly obliged to you." Appellant has just now waked to the importance of twenty-four hours notice being given when at that time it chafed under notice of any number of hours, and urged the futility of demands for compliance with its contract. The letter of October 7, 1902, was a virtual repudiation of the contract because, "It would take the entire output of about four wells at Beaumont under present conditions to fill your contract." The notice of twenty-four hours cut no figure at the time of the repudiation of the contract and can not now be made an excuse for the breach. Appellant gave as the reason of its repudiation of the contract that it had more contracts than it could fill, and not that twenty-four hours notice had not been given. It seemed to desire to escape notices rather than to invite them.

It may be, as held by the trial court, that only oil produced from wells of appellant was to be furnished by it to appellee, and that it would be excused from any greater default than that production, but if that be true and the wells did not produce sufficient oil to meet the contract, it was a matter of defense and peculiarly within its knowledge and it should have shown the amount of production. It did show the production for several months beginning with June, 1902, and as it did not show how much was produced in May the court was authorized to presume that in that month it produced the full amount necessary to meet the terms of the contract. The evidence of appellant failing to show the amount of oil produced each month

from October 3, 1902, to January 18, 1903, but the total amount produced in that time was shown, appellant has no cause to complain because the amount for each day was ascertained by dividing the whole number of barrels by the whole number of days.

A strict and proper construction of the contracts between appellant and the Texas Fuel Company would require the ruling that appellant should furnish 40,000 barrels of crude oil per month for a period of twelve months, whether its wells produced that much or not, and the ruling of the trial court which restricted its obligation to furnishing only the amount it produced each month out of its own wells was too favorable to appellant to open up any ground for reasonable complaint on its part. The court was very lenient with and liberal to appellant in his judgment on the contracts. It would have been absolutely unreasonable for the court to require appellee to show the amount of oil produced by appellant each month, because, in the first place, it would have been requiring an impossibility and, in the next place, would have been requiring appellee to prove something that did not devolve on it in making out its case under the contracts. The judgment is affirmed.

*Affirmed.*

Writ of error refused.