ST. LOUIS SOUTHWESTERN RY. CO. v. MITCHELL-CRITTENDEN TIE CO.

(Court of Civil Appeals of Texas. Dallas. May 18, 1912. Rehearing Denied June 22, 1912.)

1. CONTRACTS (§ 26*)—TIME OF GOING INTO EFFECT.

Effect is to be given to the contract from the time the parties agreed to its terms, as they did when plaintiff accepted defendant's proposition as contained in its letter giving all its terms, though the contract was to be, and was, subsequently written out, signed, and delivered.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 119, 120; Dec. Dig. § 26.*]

2. CARRIERS (§ 253½*) — PASSES — CONTRACT FOR TIES—ANTI-PASS LAW—EFFECT.

The anti-pass law does not affect a contract of a railroad in effect before such law was in force, providing, as part of the consideration for furnishing ties to the railroad, the furnishing by it of transportation over its lines to the employés of the other party while in performance of the contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1019; Dec. Dig. § 253½.*]

3. CARRIERS (§ 253½*) — PASSES—CONTRACT FOR TIES—ANTI-PASS LAW.

The agreement of a contract for furnishing ties for a railroad, in effect before, and therefore unaffected by, the Texas anti-pass law, that as part consideration for furnishing them the railroad shall furnish transportation over its line to the employés of the tie company while performing the contract, is not impaired by the provision that the transportation shall not be furnished if the agreement to do

so shall be held invalid under the law of any state; evidently intended, in view of the contract providing for delivery of some of the ties in other states, to protect the railroad against legislation of any of them similar to said Texas law.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1019; Dec. Dig. § 253½.*]

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Action by the Mitchell-Crittenden Tie Company against the St. Louis Southwestern Railway Company. Judgment for plaintiff. Defendant appeals. Affirmed.

E. B. Perkins and Daniel Upthegrove, both of Dallas, and R. S. Neblett, of Corsicana, for appellant. Greer & Nall and T. H. Bowers, all of Beaumont. for appellee.

RASBURY, J. The facts in this case are undisputed, and in order to determine this appeal it is necessary to relate only the following: Appellee is a corporation engaged in the sale and manufacture of cross-ties. Appellant is a common carrier. Prior to June 6, 1907, there was an existing contract between appellant and appellee by which appellee was to furnish appellant certain cross-ties at agreed prices. This contract expired November 1, 1907. Appellant required more ties, and appellee had them for sale, and both parties desired to enter into a contract similar to the one then in existence to cover a period of two years from said November 1, 1907, and, in order for appellee to meet the requirements of appellant for ties, it was necessary to agree in advance in order that appellee could mature its plans to furnish the required amount. Accordingly, in that connection appellant's president wrote the following letter to appellee: "St. Louis, June 6, 1907. Mr. L. E. Mitchell, Mitchell-Crittenden Tie Company, Texarkana, Ark. Texas—Dear Sir: Referring to several telegrams passing in the matter of our tie requirements for year 1908. It is understood and agreed that the Mitchell-Crittenden Tie Company will furnish the following ties for use during year 1908 at prices shown, delivery to start immediately you have completed delivery of our requirements for year 1907. (Here follows description, quantity, location and price of ties.) It is also understood and agreed that we will accept as many additional first-class white oak ties delivered along the right of way in Arkansas and Texas as it is possible for you to get out—in other words, you are obligated to deliver us a total of 400,000 white oak ties, but we will accept as many more as are obtainable. The quantity shown for red oak, cypress and pine is not to be exceeded. As soon as possible after you have completed delivery of our 1907 requirements, formal agreement will be drawn up. Meantime the acceptance of your company on original of inclosed letter, which is

written in duplicate, will be binding upon all concerned. F. H. Britton."

As directed by the letter, appellee promptly accepted appellant's proposition. It was agreed between the parties, as part of the consideration of the new contract, that appellant would furnish transportation over its line of railway to the officers, agents, and employés of appellee while in the performance of the contract. After receiving the foregoing letter and agreeing on the transportation feature of the same, appellee set about the preliminary work necessary to get out the ties for appellant under the new contract and received transportation from appellant in that behalf. Appellant ceased furnishing appellee transportation on July 12, 1907, upon advice of its counsel that to do so would be in violation of the "anti-pass law" of the state of Texas. In an attempt to reduce their agreement to writing the parties prepared a written contract which was dated June 1, 1907, but which was not in fact executed and delivered until about July 1, 1908, more than a year after the agreement was reached and after appellee had entered upon the performance of the same. The contract as finally signed contained the provision that "the railway companies will, as part payment for ties, and as a further consideration for the faithful performance of this contract, upon written request of the company, furnish transportation over their respective lines of railway to such officers, agents and employés of the tie company as may be actually necessary for the performance of the work hereunder, * * * provided, however, that should the above provisions be held invalid under the laws of any State of the United States, at any time, then the company will pay for all transportation so furnished at full tariff rates." As stated, under advice of counsel, appellant refused to furnish appellee any transportation whatever after July 12, 1907. Appellee, in the performance of its contract, paid appellant $1,335.30 for railroad fare. Appellee has in every respect performed its contract; likewise appellant, save and except the furnishing of the transportation agreed upon. Both originally and by the written contract the parties thereto in good faith thought the contract to furnish transportation could be made. Appellee would have charged and appellant would have paid $1,335.30 additional for the ties agreed upon, if either had known it was unlawful to agree to give transportation in lieu thereof. Appellee sued in the district court of Navarro county and recovered judgment for the amount claimed, the case being tried without jury, and the case is here for review.

[1] The only point in issue is the right of appellee to recover for the railway fare it was compelled to pay appellant as a result of the refusal of appellant to furnish transportation, and appellant's first assignment of error asserts that the trial court erred in not holding that appellant was prohibited from issuing such transportation by the provisions of the "anti-pass law." To properly meet the proposition contained in this assignment we think it necessary to ascertain when the parties made the agreement. Based upon the agreed statement of facts, it seems clear to us that the agreement was reached when appellee accepted appellant's proposition as contained in its letter of June 6, 1907. The fact that the agreement was written out later and signed and delivered still later is unimportant. At that time the parties assented to and agreed upon all the terms and conditions surrounding the trade, and the fact that it was to be subsequently reduced to writing does not change the rule that effect will be given to the contract from the time the parties agreed to its terms, which in this case was within two or three days after June 6, 1907, and probably sooner, since it was reduced to writing June 13, 1907, though not delivered. Weaver v. Simmons, 15 Tex. Civ. App. 154, 38 S. W. 1140; Green v. Cole, 103 Mo. 70, 15 S. W. 317.

[2] As we understand the opinion of Judge Williams in the Express Company Cases, contracts similar to the instant case, when made prior to the going into effect of the "anti-pass law," are unaffected thereby. In those cases the court, in speaking of the contract existing between the railway company and the express company which included an agreement on the part of the railway company to furnish "free" transportation to the employés of the express companies, say: "Being in existence when the statute took effect, it (the free pass) is not given or granted thereafter by the carrying out of the contract, and hence the carrying out of the contract would not come within * * * (the statute), which denounces only acts that may be committed after its adoption." T. & N. O. R. Co. v. Wells Fargo Ex. Co., 101 Tex. 564, 110 S. W. 38; G., C. & S. F. R. Co. v. Wells Fargo Ex. Co. (Sup.) 110 S. W. 41. We therefore conclude that the agreement by which appellant was to furnish appellee the transportation went into effect prior to July 12, 1907, the date when the "anti-pass law" was first in force, and that therefore the provisions of said law did not apply to said contract, and to such extent we are compelled to depart from the legal conclusions of the trial court.

[3] Appellant asserts by its second assignment of error that that clause of the contract which provides that the transportation shall not be furnished, if the agreement to do so shall be held invalid under the law of any state of the United States, impairs the same, and that the trial court erred in failing to so hold. We cannot agree with appellant. By the agreement some of the ties were to be delivered in states other than the state of Texas, and we conclude that a fair

and reasonable construction of said clause is that it was intended to protect the appellant against legislation similar to the Texas anti-pass law in whatever states appellee might be entitled to demand transportation from appellant.

What we have said in disposing of appellant's first assignment, in our opinion, disposes of its third, fourth, fifth, and sixth assignments of error, and hence it becomes our duty to also overrule said assignments.

Finding no reversible error in the record, the judgment of the trial court is affirmed.