## TEXARKANA PIPE WORKS v. CADDO OIL & REFINING CO. OF LOUISIANA. (No. 2328.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 11, 1921. Rehearing Denied March 10, 1921.)

1. **Sales ⬅24—Option to buy oil during specified years at stated terms held valid.**

In a contract for the sale of the fuel oil necessary to operate the buyer's plant during the ensuing year, a provision, stating that in consideration of the purchase of the oil the seller gave the buyer the option to buy the oil needed during the two succeeding years on the terms therein stated, was a valid option for sufficient consideration, which was in effect a continuing offer to sell, and became a binding contract for sale on its acceptance by the buyer.

2. **Sales ⬅24—Option should be exercised before time for first delivery.**

An option to buy fuel oil needed for buyer's plant during the two succeeding years, delivery to begin on January 1st, which contained no provision fixing the time for exercise of the option, should be exercised before January 1st of the year in question, and an acceptance thereof on December 4th next preceding was in time.

3. **Sales ⬅24—Assent held sufficient acceptance of option.**

Where the terms of an option for the purchase of the oil needed for the buyer's plant during the year did not provide for any particular form or method of acceptance of the option, simple assent by the buyer would be sufficient.

4. **Sales ⬅53(2)—Evidence held sufficient to raise jury issue that acceptance complied with option.**

Evidence in support of a plea of reconvention for failure to deliver oil in accordance with the contract held sufficient to require submission to the jury of the issues whether the buyer had accepted the option purchase by a letter written by him, which was not in evidence, and whether the price stated in the letters conformed to the option price which wa dependent on the market price of crude oil.

5. **Sales ⬅1(4)—Contract for oil required for plant is not unenforceable.**

A contract to sell to the buyer the fuel oil required for the operation of his plant is not unenforceable because the quantity sold is not certain, since it can be rendered reasonably certain.

---

6. Sales ⬡⟫181(11)—Evidence held not to show conclusively impossibility of performance by seller.

In an action for the agreed price of oil, where defendant filed a plea in reconvention for plaintiff's failure to deliver oil under previous contract, evidence showing that plaintiff owned one refinery and leased another, and that not all parties having contracts with plaintiff were in a preferred class over defendant under the regulations of the United States Fuel Administration, *held* not to show conclusively the impossibility of plaintiff's performance of the previous contract.

7. Evidence ⬡⟫420(3)—Contract for sale of oil held unconditional.

Where the defendant's plea in reconvention was based on a written contract set out therein which was unconditional, a defense in the supplemental petition, based on a condition claimed to have been within the contemplation of the parties at the time of making the contract, the happening of which relieved the plaintiff's obligation, was subject to exception.

8. Sales ⬡⟫55 — Contract governed by law where made.

The liability of a party to a contract for the sale of fuel oil, made in another state, is governed by the law of that state.

Appeal from District Court, Bowie County; H. F. O'Neal, Judge.

Suit by the Caddo Oil & Refining Company of Louisiana against the Texarkana Pipe Works, in which the defendant interposed a plea in reconvention. From a judgment for plaintiff after the court peremptorily directed a verdict for plaintiff for the amount sued for and against the plea in reconvention, defendant appeals. Reversed and remanded.

The appellee sued the appellant company to recover $4,633.50 as the alleged contract price for 2,151 barrels of fuel oil sold and delivered from November 26, 1918, to December 17, 1918, and 2,121 barrels of fuel oil sold and delivered from January 4, 1919, to January 24, 1919. The defendant filed a general demurrer, general denial, and a plea in reconvention for damages resulting from the breach of an alleged agreement on the part of appellee to furnish the appellant with fuel oil during the year 1918. The failure to furnish the oil occurred during the period between May 31 and November 20, 1918. The plaintiff filed a supplemental petition excepting and demurring to the plea in reconvention, and specially pleading matters in avoidance of any liability on the plea in reconvention. By supplemental answer the defendant set out matters in effect showing a lack of legal excuse for a breach of the contract. The plaintiff entered a denial of the supplemental answer.

There is practically no dispute in the evidence. In the trial the only real controversy under the pleadings and evidence was whether or not the appellant should recover of appellee in reconvention any sum as damages for an alleged partial breach of a contract for the sale by appellee to appellant of fuel oil during the year 1919. The appellant pleaded in the plea of reconvention, and offered in evidence, the following written contract:

"This agreement, made and entered into on this 3d day of November, 1915, by and between Caddo Oil Refinery of Shreveport, Louisiana, a corporation duly organized and existing under the laws of the state of Louisiana, hereinafter styled seller, and Texarkana Pipe Works (not inc.) of Texarkana, Texas, hereinafter styled buyer, witnesseth:

"Said seller hereby agrees to sell and deliver to said buyer, and said buyer agrees to purchase and receive from the seller, between January 1, 1916, and December 31, 1916, the residuum fuel oil necessary to supply fuel and operate their pipe works at Texarkana, not to exceed a maximum of thirty thousand barrels, which maximum the seller agrees to furnish and the buyer to take if required for said purpose, and not less than a minimum of twenty thousand barrels, which minimum the buyer contracts and guarantees it will take and the seller agrees it will supply for such fuel purposes; it being understood that the seller represents and contracts that the residuum to be furnished hereunder is fit only for fuel purposes, and not to contain more than one per cent. water and to contain above 18,000 B. T. U.

"The seller agrees that all shipments of oil are to be made in tank cars furnished by the railroad company, and that the seller is to use due diligence at all times to procure empty cars in which to make shipment, to the end that there will be no delay in the furnishing of oil on this contract, by reason of an insufficient number of cars being received in which to make shipment.

"It is further agreed and understood that all shipments and deliveries of said oil shall be f. o. b. cars railway tracks at Shreveport, Louisiana, and the purchaser shall pay sixty-two cents (62¢) per net barrel of forty-two (42) gallons for said oil, payment to be made on the first and fifteenth day of each month for all oil received prior to the day of payment.

"It is further agreed by the seller that shipments shall be made by it within two days after receipt of written order therefor, from the buyer. It is further agreed that the seller shall not be required to ship hereunder more than 3,000 barrels of residuum fuel oil in any one month, nor more than one car in any one day.

"Seller agrees to begin shipment of oil hereunder on January 1, 1916.

"In consideration of the purchase of residuum fuel oil by the buyer as above set forth, the seller hereby gives to the buyer an option on residuum fuel oil required to operate their pipe works at Texarkana during the years 1917 and 1918 on the following terms: Contract price of 62¢ above set forth is based on price on light Caddo crude of 80¢ per barrel in the field. Price for contract on residuum oil for the year

1917 to be based upon field price of light Caddo crude on December 1, 1916, and contract price for the year 1918 to be based upon the field price of light Caddo crude December 1, 1917. On the dates mentioned, should the field price of light Caddo crude be 80¢, then the contract price for the following year for residuum fuel oil would be 62¢ per forty-two gallon barrel f. o. b. Shreveport. In case there is an advance in the price of light Caddo crude, one-half of the advance to be added to the price of 62¢ on residuum fuel oil. In case there is a decline in the price of light Caddo crude, one-half of the decline to be deducted from the price of 62¢.

"It is expressly agreed and understood that neither of the parties hereto shall be liable to the other for failure to perform and respect obligations to this contract or any part thereof when such failure to perform is directly or indirectly occasioned by reason of any war, invasion, insurrection, blockade, riot, flood, earthquake, act of God, strike or other labor disturbance in the United States or any foreign country.

"This contract is executed in duplicate."

And it was further alleged in the plea of reconvention that under the terms of the said contract the appellant exercised the option stipulated in the contract "to continue the same in force for the year 1918 and in accordance with the scale of prices of oil for such year," and thereby the appellee was obligated to supply and sell appellant "sufficient residuum or fuel oil to operate defendant's pipe works at Texarkana, not to exceed a maximum of 30,000 and not less than a minimum of 20,000 barrels at and for the price of $1.22 per barrel." It was moreover alleged that during 1918 the appellee, in compliance with such obligation and the terms of the contract, supplied appellant sufficient residuum and fuel oil to supply its pipe works at Texarkana, with the exception of the period from the last of May to about November 20, 1918. On account of this alleged failure the appellant was, as averred, obliged to purchase 6,968 barrels of fuel oil to keep the pipe works in operation, and to pay therefor $4,036.85 in excess of the amount they would have had to pay for the same quantity of fuel oil if the appellee had complied with its contract during the period of default.

It was proven that the name Caddo Oil Refinery was later changed to Caddo Oil & Refining Company of Louisiana. The appellee admitted making the original contract pleaded by appellant, but denied any renewal of said contract for the year 1918.

At the conclusion of the evidence the court peremptorily instructed the jury to return a verdict in favor of the plaintiff for the amount sued for, and against the plea in reconvention. The defendant appeals, and assigns error to the action of the court.

J. I. Wheeler and John J. King, both of Texarkana, for appellant.

Mahaffey, Keeney & Dalby, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). It is chiefly to be determined on this appeal whether or not the appellant failed to support the plea in reconvention by any such evidence as would authorize the jury to find for them on such plea. The first question arising, therefore, is, Did the appellant and appellee, pursuant to the stipulation in the contract, enter into a binding contract for the sale and purchase of fuel oil for the year 1918? The pertinent stipulation provides:

"In consideration of the purchase of residuum fuel oil by the buyer as above set forth, the seller hereby gives to the buyer an option on residuum fuel oil required to operate their pipe works at Texarkana during the years 1917 and 1918 on the following terms [which are set out]."

[1] According to the wording of the stipulation in hand, "the seller," for a "consideration of the purchase of residuum fuel oil by the buyer as above set forth" does "give," or assent, that "the buyer" have "an option," or privilege or right to buy residuum oil to the quantity "required to operate their pipe works at Texarkana during the years 1917 and 1918" for the prices specified. There are no terms left open for further negotiations. A consideration is stated which is sufficient. The seller was agreeing, for a consideration, with the buyer that it should have the right to buy oil during a certain time at a stipulated price. It is a continuing offer to sell which may or may not, within the time specified, at the election of the optionee, be accepted. In effect it is an agreement to renew or extend the original contract for another year at the option of the buyer, and an acceptance of the option within the time is sufficient to bind both parties. The option, though, is not in legal effect a completed contract until there is acceptance by the buyer of the continuing offer of the seller in the manner and within the time specified. The testimony relied on to establish the alleged contract of option was that of the general manager of the pipe works and certain correspondence between him and the oil company. According to the manager's testimony:

"We had the matter up with the Caddo Oil and Refining Company of Louisiana in December, 1917, on the question of renewing under our option in the original contract," meaning that of 1915.

The letter from the oil company to the manager, of date December 5, 1917, was read, which says:

"We are in receipt of your letter of the 4th (December 4, 1917) stating you desire to avail yourselves of the option of December 1, 1917, for fuel oil for 1918. I have the contract before

me, and it appears you had an option from December 1. Your letter was dated December 4, some three days after your option expired. The price of fuel oil is very high, a considerable quantity is now being sold for $1.80 to $2.50 per barrel, and it looks as if it will maintain these prices during the present year. We have been billing you oil at 72 cents per barrel, being about one-half of the market value of the oil. We do not care to take the advantage of the technicality of your permitting the option to expire, but we do believe under the unusual circumstances we should be entitled to a better price than $1.22 per barrel for the year 1918. When our contract was made neither of us expected these unusual conditions would come about. I think you should pay us at least $1.40 per barrel for your 1918 supply of fuel oil."

The manager, continuing, testified:

"I answered that letter. We were writing about a contract dated December 15, 1915, covering our fuel oil requirements for 1916, with option for renewal for the years 1917 and 1918. That is the contract we were corresponding about. I got this letter of December 17 in reply to what I had written him about the option; he accepted it."

The letter mentioned reads:

"We are in receipt of your letter of 6th inst., stating your contract automatically renews itself on the 1st of December, and it was not necessary for you to notify us of your intention to extend the option over the year 1918. We still feel that you should have notified us promptly on December 1. However, this is a small matter, and as written you previously, we do not feel inclined to take advantage of you, but do feel under the circumstances we are, entitled to a better price than $1.22 for the oil. When contract was made with you there was no thought of our being at war. We feel that you should take this into consideration and pay us a fair price for the oil. If you insist on oil at $1.22 per barrel we will supply. However, we do feel that we are entitled to a fair price for same. We will be pleased to hear from you on this matter."

The manager, continuing, said:

"We replied to that letter, to ship the oil. The Caddo Oil & Refining Company after that up until May complied with the terms of that contract. They furnished us oil at the fixed price of $1.22 per barrel."

[2-4] There is no precise time stated in the stipulation within which the acceptance must be made; but it is reasonably contemplated that such acceptance should be made before the expiration of December 31, for the original agreement provided that shipments of oil were to begin "on January 1," and the oil was to be delivered "between January 1 and December 31." Therefore the time of the notice, on December 4, as shown in the letters, would be within the time required by the option. And any particular form or method of acceptance is not provided for in the stipulation. Simple assent would be sufficient compliance, and such assent is apparent from the evidence. Did the appellant accept the option contained in the 1915 contract according to its terms? The letter written by appellant to appellee was not in evidence, and the exact wording of the acceptance does not appear. The letter of appellee states the letter of appellant to have stated, "Desire to avail yourselves of the option of December 1, 1917, for fuel oil for 1918," And in the light of the evidence it would fairly appear that the appellant was accepting the option provided for in the "contract entered into in December, 1915, covering fuel oil requirements for 1916 with option for renewal for the years 1917 and 1918." The general manager of the appellant so testified, and there is evidence authorizing an inference of fact that there had been a renewal by the parties of the option for the year 1917. The manager of the appellant further testified that in November, 1917, the appellee was furnished oil on the contract of 1915. And viewed from the standpoint of a peremptory instruction, it is thought that it may be inferred that the acceptance of December 4 was to continue in force the contract of 1915, as renewed in 1917, for the year 1918. There is, at least, not a lack of any evidence to show identity of the option pleaded, or a want of mutuality of the parties as to the identical option thus accepted. The effect of the acceptance of appellant was to convert the offer in the option on the part of the appellee into a binding contract upon both parties. The correspondence seems to state that the price payable for the oil was "$1.22 per barrel," but such wording cannot be said, as a matter of law, to have so changed and varied the terms of the option stipulation to that extent as to make the acceptance in terms other than the very terms of the option. The prices provided to be paid in the option stipulation were based on "the field price of light Caddo crude oil December, 1917," "in case there is an advance in the price of light Caddo crude oil, one-half of the advance is to be added to the price of 62¢ on residuum fuel oil." Therefore the price of $1.22 per barrel may, as a fact, have been within the terms of the option stipulation, and the circumstances in evidence so suggest as an inference of fact. And the suggestion for modification of the price to be paid seems to come from appellee, and not appellant. In this view the acceptance on the part of the appellant could not be said, as a matter of law, to have been qualified and couched in different terms than stated in the option stipulation.

[5, 6] Concluding then, as we have, that the evidence may have warranted a finding by the jury of the acceptance within the time specified of the identical option contained in the contract of 1915 according to its terms, the appellee would thereafter be bound to sell and the appellant to buy all the fuel oil

required to operate the pipe works at Texarkana during the year 1918. The fact that the amount of oil to be purchased is uncertain would not make the contract unenforceable. The amount of oil reasonably required for such use is capable of ascertainment in point of fact. And in the facts of this case it may not be said the amount required is incapable of ascertainment. The amount of oil required to keep the pipe works in operation during the months of 1918 was proven. If the appellant had refused to take that quantity of oil required for its use during the year 1918 the appellee could have enforced, under the contract, a liability for the refusal and default. Therefore the contract was not void for want of mutuality as to consideration, quantity of oil, and time of purchase and delivery. It was reasonably contemplated by the parties that the delivery of the oil should be as ordinarily required for use in operating the plant as a pipe works. The entire terms of the original contract follows, and is a part of the renewal contract for 1918 here sued on. The peremptory instruction therefore should not have been given unless the defense under which evidence was offered authorized a verdict against the plea in' reconvention. And looking to the evidence in that particular, it is believed that an issue of fact, that the jury under the proper instruction should have passed on, was raised and presented. There is some proof in this evidence warranting the jury in finding that such defense may not have been sufficient to relieve the appellee upon the ground of impossible performance. San Jacinto Oil Co. v. Texas Oil Co., 47 Tex. Civ. App. 477, 105 S. W. 1163; Kingsville Cotton Oil Co. v. Waste Mills, 210 S. W. 833. The evidence goes to show that the oil company owned a refinery outright, and held and operated another under lease. And there is some evidence going to show that all the parties having contracts with the oil company were not in a preferred class over the pipe works under the regulations of the United States Fuel Administration.

[7] The court sustained certain exceptions to the appellee's supplemental petition, and the ruling of the court thereon is challenged by cross-assignments of error. The defense pleaded in the fourth paragraph was based on a stipulation of the contract itself, but upon a certain existing condition claimed to have been within the contemplation of the parties at the time of making and entering into the contract, and which condition happening, as it did, would relieve, or temporarily relieve, from any obligation to perform the contract. The contract is by its terms a general one, and not a conditional one; and the language, properly construed, would not show by implication that the parties contemplated any variation from its terms or conditional performance thereof by the conditions alleged. We conclude that the court did not err, and that the first cross-assignment should be overruled.

[8] The fifth paragraph presented a defense as a pleading, and we think there was error in, sustaining the exception thereto. The contract was made in the state of Louisiana, and the plaintiff's liability thereunder was to be governed by the laws of that state in such cases made and provided. Whether the proof supports the pleading is another question, depending on the facts, and not here involved in determining the exception. The second cross-assignment of error is sustained. It was stipulated in the contract that "an act of God" should relieve performance of it; and the pleading, as such, in the sixth paragraph, alleged such an occurrence, wholly disabling it from compliance with the contract. As a pleading it was not subject to demurrer, and it was error to strike it out. The evidence thereunder, offered both by appellee and appellant, would have to be subsequently looked to to determine whether or not the performance of the contract under its terms was rendered impossible by reason of the act.

The third cross-assignment is sustained.

The judgment is reversed, and the cause remanded for another trial.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes