**VISE v. FOSTER.**

No. 2991.

Court of Civil Appeals of Texas. Waco.

Feb. 14, 1952.

Rehearing Denied March 27, 1952.

Carter & Carter, Sherman, Chancellor & Wood, Dallas, Ralph W. Yarborough, Louis Scott Wilkerson, Austin, for appellant.

Freels & Elliott, Sherman, for appellee.

TIREY, Justice.

This is a suit for damages grounded on a breach of a written contract. It was tried without the aid of a jury and the court in its decree found that R. H. Vise was indebted to appellee in the sum of $50,186.72, and rendered judgment accordingly. Vise seasonably perfected his appeal and the cause was transferred from the Dallas Court of Civil Appeals to this court.

A statement is necessary.

The contract in suit provided:

"An agreement has on this 2nd day of July, A.D. 1931, been made between R. H. Vise Associates, a partnership composed of R. H. Vise, Harmon C. Shelby, Herman Krattinger and F. W. Cowell, all of Grayson County, Texas, acting by and through R. H. Vise, one of said partners and who has heretofore been authorized by all of said partners to execute sales and other contracts for said partnership, hereinafter called Seller, parties of the one part, and G. P. Foster, of Grayson County, Texas, hereinafter called Buyer, party of the other part, it being understood and agreed by all of said parties to execute another contract on or before thirty days after this date to enlarge and cover all agreements between said parties hereto.

"Seller hereby agrees for themselves and assigns to sell, deliver and furnish to Buyer and Buyer agrees to purchase, accept, receive and pay Seller for One Hundred Thousand (100,000) barrels of crude oil of the gravity of 39 degrees Baume test or better at the price of fourteen (14¢) cents per barrel of 42 gallons each f. o. b. cars at Seller's loading point or points in the East Texas oil fields, upon the following terms and conditions, to-wit:

"Seller agrees to deliver said quantity of crude oil to Buyer at the rate of a minimum of twenty (20) cars of at least 8000 barrel capacity per calendar month, with a maximum of not over fifty (50) cars of such capacity per calendar month as such shipments are ordered out by Buyer f. o. b. at such railroad loading points in East Texas oil fields from which loading points the railroad freight rate to Denison, Texas, is not over eleven (11¢) per hundredweight.

"Buyer agrees to pay for oil so delivered by Seller every fifteen days and to make the first payment to Seller on August 15, 1931, for all oil delivered Buyer up to and including July 15, 1931, and to pay on September 1st, 1931, for all oil delivered Buyer from July 16, 1931, to July 31, 1931, and to pay Seller every fifteen days thereafter for all oil delivered Buyer up during each fifteen day period ending one calendar month prior to date of each of such payments.

"Seller agrees to furnish Buyer within the next thirty days copy of power of attorney from his associates and partners hereinabove named authorizing him to execute this contract in order that said power of attorney may be made a part of the formal contract.

"Buyer agrees that in event proration is enforced in the oil field or fields from which the oil to apply on this contract is to be produced, that Seller at his option may reduce the minimum and maximum deliveries of oil per month under this agreement fifty (50%) per cent, in which event the total deliveries by Seller remains at 100,000 barrels.

"Buyer agrees to furnish tank cars in which to transport said oil after the first five cars of oil under this agreement are shipped, Seller agreeing to furnish said first five cars and to assist Buyer in securing tank cars for use in handling this

oil when requested so to do by Buyer; it being understood Seller is to be to no expense in securing cars for use in shipping oil covered by this contract.

"Buyer reserves right to dictate routing on all shipments."

G. P. Foster filed this suit on the 24th day of November, 1931 against R. H. Vise, Harmon C. Shelby, Herman Krattiner and F. W. Cowell. Vise filed his first amended answer on December 28, 1931. The other defendants did not file answers. The case went to trial for the first time on January 8, 1951, at which time all defendants except Vise were dismissed from the suit, and no error is assigned to this action. On the day of the trial plaintiff's attorney filed a motion to substitute F. M. Foster, independent executor of the estate of G. P. Foster, as plaintiff, and this motion was granted and the motion and the order show that the original plaintiff, G. P. Foster, died on December 29, 1949.

Appellant's point 1 is substantially that since the plaintiff brought this suit on the 24th day of November, 1931, and since defendant timely answered it on the 28th of December, 1931, and there having been no further proceedings in the case for a period of 19 years, and until after the death of G. P. Foster, the original plaintiff, and the plaintiff having failed, by pleading or proof, to excuse such an unreasonable delay on his part in the prosecution of his suit, such delay amounted to an abandonment and discontinuance of his cause of action as a matter of law and it was fundamental error for the court to proceed to trial and judgment because the unexplained and unreasonable delay deprived the trial court of jurisdiction. We overrule this contention.

The rule is: "Where the defendant in a suit is called to answer and has responded to the call, the duty devolves on the plaintiff to proceed in prosecuting the suit to a conclusion with reasonable diligence, and whenever a delay of an unreasonable duration occurs, such delay, if not sufficiently explained, will raise a conclusive presumption of abandonment of the plaintiff's suit, and a discontinuance results. *However, since the discontinuance must be based on a factual situation involving lack of due diligence, same does not and cannot become effective until the basic facts are adjudicated by the court. Whenever the hearing for such adjudication is had, the plaintiff has the right to be heard to explain, if he can, his delay in prosecuting his suit.*" (Italics ours.) See Callahan v. Staples, 139 Tex. 8, 161 S.W.2d 489, 491, pars. 2–5, Com.App., opinion adopted by S.Ct. The Supreme Court has not seen fit to change the above rule.

Since appellant raised point 1 for the first time after the cause reached the appellate court, and since he was notified that the suit was set for hearing and filed no motion to have appellee's suit dismissed, nor filed plea in abatement, but on the contrary announced ready for trial and waived a jury and proceeded with the hearing on its merits, it is our view that this factual situation brings point 1 within the exception provided in the last part of the rule, and it is overruled.

Point 2 is to the effect that the contract sued upon was only temporary and that it expired at the expiration of thirty days, at which time it was provided that another and enlarged contract was to be executed on terms and conditions yet to be agreed upon to cover any transactions occurring after said thirty day period, and since the parties failed to agree upon such terms and did not enter into another contract, no contractual relations existed between the parties. Point 3 is to the same effect.

We think that each of the foregoing contentions is without merit. It is our view that a careful reading of the contract in suit shows that the minds of the parties met on the material matters relating to the sale and delivery of the 100,000 barrels of oil. We find that the contract was dated; that it named the parties; that it set forth the authority of the parties to make the contract; it described the commodity and the volume to be bought and sold and the consideration to be paid therefor; the rate of delivery as well as the time of payment was each specified and the mode and manner of transporting and delivering the commodity was agreed upon. Near the end of the contract we find this

paragraph: "Buyer agrees that in event proration is enforced in the oil field or fields from which the oil to apply on this contract is to be produced, that Seller at his' option may reduce the minimum and maximum deliveries of oil per month under this agreement fifty (50%) per cent, in which event the total deliveries by Seller remains at 100,000 barrels." This last provision is certainly in irreconcilable conflict with appellant's contention that the sale of the 100,-000 barrels of oil was only a temporary contract and not binding. It is true that the last part of the first paragraph provides: "* * * it being understood and agreed by all of said parties to execute another contract on or before thirty days after this date to enlarge and cover all agreements between said parties hereto", but there is nothing in said language to indicate that the minds of the parties had not met on the sale of the 100,000 barrels of oil, or that any of the provisions with reference to the sale and delivery of the 100,-000 barrels of the oil would be modified. What other agreements the parties had which they intended to enlarge upon and cover were not tendered by any evidence. You cannot read the contract in suit without the feeling that all of the terms of the contract were agreed upon between the parties as to the purchase and sale and delivery of the 100,000 barrels of oil and that nothing was left for future agreement with reference thereto. There is nothing in the contract to indicate that such sale was dependent upon the contract to be executed within 30 days. Since each and every material element of the contract with reference to the sale was mutually agreed to and set forth and nothing of any material nature was left out to be agreed upon, we think the contract was binding. Moreover, testimony was tendered to the effect that after Vise executed the contract in suit he told one of his associates and partners named in the contract that as soon as he got a connection with the Sun Oil Company that he would breach this contract. Vise's former associate, Shelby, testified in part: "A. After it kind of mentally assimilated itself that it was not very much money for oil, he said, 'Oil is only a dime a barrel in East Texas, and we are waiting for a connection with the Sun Pipe Line, and we haven't got it, and we need money, and it is the best we could do.' He said,. 'When we get the connection with the Sun Oil Company, we won't need the contract.' * * * A. He wouldn't need the contract if we got a connection down there. And I was worried about the matter of the expense of holding it up here. I didn't think about that to begin with, until I got to studying it. He said, 'Don't worry about that.' He would take care of that. 'Don't worry about the contract. When we get the oil down there, we can forget about the contract." Although the defendant Vise was present in the courtroom he did not take the witness stand and deny these statements. Moreover, on August 27, 1931,. Vise wrote Foster as follows: "You will find attached invoice covering crude oil shipped to you up to July 30th. I would appreciate very much a check to cover this amount, as I have some obligations that are past due, and I was depending on this to take care of same." We think it is significant that at the time Vise wrote this letter that the 30 day period had expired and that he made no complaint about any of the provisions of the contract in suit, nor does he suggest that any of the terms with reference to the sale of the oil were to be changed by the new contract that was to be executed 30 days after the contract in suit had been executed. It is our view that the evidence tendered is sufficient to support the implied finding of the trial court that the minds of the parties met as to the sale and delivery of the 100,000 barrels of oil in suit. The evidence tendered so abundantly supports the fact that the minds of the parties met on the sale of the 100,000 barrels of oil that it seems useless to us to cite authorities. In Mid-Continent Petroleum Co. v. Russell, 10 Cir., 173 F.2d 620,. 622, we find this statement of the general rule: "Where the parties presently assent to all of the essential terms of an agreement and intend thereby to be presently bound, the mere reference in conjunction therewith to a subsequent contract does not render the contract entered into unenforceable." That general statement is cer-

tainly applicable to the factual situation here. In Radford v. McNeny, 129 Tex. 568, 104 S.W.2d 472, 475 (Com.App., opinion adopted by the S.Ct.) we find this statement of the general rule: " * * * to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations." In 13 C.J. 292, we find this statement of the general rule: "Where the contract is already in writing, it is none the less obligatory on both parties because they intend that it shall be put into another form." See also 17 C.J.S., Contracts, § 49. See also 12 Amer.Jur. 522; Rosebud Oil & Cotton Co. v. Merchants & Planters Oil Co., Tex.Civ.App., 248 S.W. 116; Pierce Oil Corp. v. Gilmer Oil Co., Tex.Civ.App., 230 S.W. 1116; Walker Grain Co. v. Denison Mill & Grain Co., Tex.Civ.App., 178 S.W. 555; St. Louis S. W. R. Co. v. Mitchell-Crittenden Tie Co., Tex.Civ.App., 148 S. W. 1191; International Harvester Co. v. Campbell, 43 Tex.Civ.App. 421, 96 S.W. 93. See also Roig v. Electrical Research Products, Inc., 1 Cir., 57 F.2d 639.

Appellant's fourth point is to the effect that since the buyer bound himself to furnish tank cars in which to transport the oil after the first five cars of oil under the agreement were shipped, and since defendant Vise had shipped 18 cars of oil under the contract in suit, and it was the obligation of the buyer to furnish cars to transport oil as a condition precedent to the duty of Vise to ship said oil, and there being no evidence in the record that the buyer furnished or offered to furnish the cars at seller's loading point or points in the East Texas field, the appellee failed to prove performance of the contract on his part and because thereof his suit must fall. We think there is no merit in this contention.

The contract specifically provides as to the shipment of the oil. It also specifically provides as to how the buyer shall make payment to the seller for the oil delivered. It provides that the seller shall deliver a quantity of crude oil to buyer at a minimum rate of 20 cars of at least 8,000 barrel capacity per calendar month and a maximum of not over 50 cars of such capacity per calendar month, as such shipments are ordered out by buyer f. o. b. at such railroad loading points in East Texas oil fields from which loading points the railroad freight rate to Denison, Texas, is not over 11 cents per hundredweight. Testimony was tendered to the effect that the seller delivered to buyer only 3,566.40 barrels of oil under the contract during the month of July, 1931; that the first shipment was received on the 4th of July and the last shipment on the 28th of July, 1931; that during July only 18 cars were shipped and not a minimum of 20 as the contract provided; that demand was made upon appellant the latter part of July, 1931 to fulfill the terms of the contract and ship the minimum quota of oil. On the 31st day of July, 1931 appellee wrote appellant:

"You are hereby notified that your failure to furnish all cars of crude oil ordered shipped me during the month of July, 1931, as provided in our contract of July 2nd, 1931, resulted in my being forced to shut down my refinery for several days during said month at a great loss to me.

"Confirming order given you orally July 27, 1931, order is hereby given you for twenty cars of crude oil under our said contract, same to be shipped to me at the rate of two cars per day for the first ten days of August, 1931. Failure to furnish said twenty cars as per contract will force the shutting down of my refinery, in which event I shall insist that you reimburse me for any loss sustained by such cessation of operation."

It is without dispute that appellant breached the contract in suit when he failed to ship the minimum of 20 cars of oil during July, 1931, and no explanation is offered for such breach, except the testimony of the witness Shelby previously quoted, which is to the effect that Vise would breach it when it was to his advantage. The 18 cars delivered contained only 3,566.40 barrels of oil and such shipments were 4,433.60 barrels short of the monthly minimum of 8,000 barrels. Appellant not only failed and refused to ship the minimum of 20 cars in July, 1931, but he failed and refused to ship any oil after July 28, 1931.

It is our view that the failure of appellee to pay the appellant on the 15th of August, 1931, for oil delivered between the 1st and 15th of July, 1931, was not such a breach of the contract on the part of appellee as would discharge the appellant from the performance of his part of the contract, because appellant had already breached his contract some two weeks prior thereto.

It is appellant's contention here that his breach of the contract as early as August 1st should be excused because two weeks after he breached the contract the appellee refused to pay money for oil previously shipped. We are not in accord with this view. The evidence tendered is ample to support the implied finding of the trial court that appellant Vise breached his contract with the buyer (because it was to his advantage to do so) before the buyer was legally bound to pay for the oil that the seller had delivered to the buyer. It is our view that time of delivery was of the essence of this contract. The monthly minimum quota had been set up and agreed upon; it was necessary for appellee to receive the oil in a continuous flow in order to carry on the operation of his refinery and an oral demand and a written demand were both made for delivery of the oil on time in July, 1931, and thus demonstrated the importance of the time element. See 10 Tex. Jur. 412. Accordingly, appellant's fourth and fifth points are overruled. See 10 Tex. Jur. 406, 416, 404, and 37 Tex.Jur. 349.

■ Appellant's sixth point is to the effect that the undisputed evidence shows that the appellee could not obtain the oil contracted for in the market and that as a result he was forced to shut down his refinery; that defendant Vise had notice at the time of making the contract that plaintiff would use such oil in his manufacturing process at his refinery; that plaintiff gave defendant notice on July 31, 1931, of his loss of profits by reason of having to close down his refinery for lack of the oil contracted for; that the plaintff's legal measure of damages, if any, is his loss of profits from his refining business, which was in contemplation of the parties when making such contract, and that it was error for the trial court to award appellee damages on the basis of market value. We are not in accord with this view.

The contract bound appellant to furnish appellee with 100,000 barrels of crude oil of the gravity of 39 degrees Baume test or better at the price of 14¢ per barrel f. o. b. appellant's loading point in East Texas. The record shows that appellant breached this contract during the first month of its existence and that appellee made both oral and written demands for performance, which demands were ignored by appellant. The evidence tendered established market value for the same quality of oil as well as the amount of oil produced from appellant's wells and that appellant sold the oil to Sun Pipe Line Company and Shell Oil Company that should have been delivered to appellee, and that appellant received a greater price or profit than he would have received had he carried out his contract with appellee. Appellee in his brief says that the trial court made its award by calculating the difference between the contract price of the oil and the market value of the oil and by allowing for the maximum delivery during the months when oil was the cheapest and a minimum amount delivered when the price of oil was the highest, and that this was favorable to appellant. Appellant does not challenge this statement.

■ The court in making this award followed the rule found in 9 Cyc. 698. "Although strictly and technically speaking there can be no breach of contract until the time for performance has arrived, yet if before that time arrives the promisor expressly renounces the contract and declares his intention not to perform it, the promisee may, in most jurisdictions, treat this as a breach, and may at once bring an action for damages. That is, positive notice of an intended breach of a contract to be performed in future may be treated as an actual breach. There is, however, another course open to the promisee. *He may, if he pleases, treat the notice of intended breach as inoperative and await the time when the contract is to be performed, and then hold the other party responsible for all the consequences of nonperformance.* But in that

case he keeps the contract alive for the benefit of the other party as well as for himself and remains subject to all his own obligations and liabilities under the contract, and enables the other party not only to complete the contract, notwithstanding his previous repudiation of it, but also to take advantage of any intervening circumstance which would justify him in declining to complete it." (Italics ours.) 13 C.J. 804, p. 701, 17 C.J.S., Contracts, § 472. The Texas courts have followed this rule.

Chief Justice Stayton in Ullman, Lewis & Co. v. Babcock, 63 Tex. 68, announced this statement of the rule: "The true measure of damage would be the difference between the contract price and the value at the time and place at which, under the contract, it ought to have been delivered. This rule has been followed by our courts in Walker Grain Co. v. Denison Mill & Grain Co., Tex.Civ.App., 178 S.W. 555; Gibbens & Roundtree v. Hart, Tex. Civ.App., 117 S.W. 168; Steinlein v. S. Glaisdell, Jr., Co., Tex.Civ.App., 44 S.W. 200; J. M. Radford Grocery Co. v. Jamison, Tex.Civ.App., 221 S.W. 998. See also 17 C.J.S., Contracts, § 458, p. 943; Texas Digest, Vol. 33, Sales ⊜418(2), and the opinion of this court in Lathrop-Marshall Grain Co. v. Nash, Tex.Civ.App., 282 S.W. 824; also 46 Amer.Jur. 802, 803; Eureka Producing Co. v. Hoyt, Tex.Civ.App., 266 S.W. 203.

Appellant says in effect that the rule of damages applied by the trial court is in conflict with the holding of our Supreme Court in West Lbr. Co. v. R. C. Cummings, Tex.Com.App., 228 S.W. 911. We are not in accord with such view. Plaintiff in the foregoing case selected his measure of damages and of course he was bound by the applicable rule.

In 13 Tex.Jur. 85, we find this statement of the rule: "The measure of damages for breach of a contract may be controlled by the theory upon which plaintiff sues; and if a choice has been made his recovery will not be measured by rules which might have been applicable had he based his suit upon another theory." This statement is in accord with the statement of the rule in 9 Cyc. supra, and since appellee made his election he was entitled to have the trial court to fix his damages accordingly. This is in accord with the rule announced by our Supreme Court in American Mutual Liability Ins. Co. v. Parker, 144 Tex. 453, 191 S.W.2d 844, points 4, 5 and 6 on motion for rehearing. Further comment on the foregoing matter would serve no useful purpose. It follows from what we have said that there is no merit in appellant's points 7, 8 and 9, which also complain of the damage awarded, and each is overruled.

Point 10 is to the effect that the court erred in overruling appellant's motion to strike from the record all of the testimony of the witness, S. V. Earnest; Point 11 is to the effect that his testimony was hearsay; Point 12 is to the effect that none of the testimony tendered as to price was competent and that it is insufficient to support the judgment rendered. We overrule each of these contentions.

First of all, appellee tendered in evidence without objection a certificate bearing the signature of Robert S. Calvert, Comptroller of Public Accounts, which certificate sets forth the amount of oil produced from appellant's wells in East Texas from September, 1931 through August, 1933, and to whom such oil was sold and the value of said oil. We have carefully reviewed the testimony of the witness Earnest and he testified to the effect that he had a memorandum from the office of G. P. Foster of the monthly average prices of crude oil covering the period from July 2, 1931 through September 2, 1933, and that this memorandum reflected the market price of crude oil for such period; that had appellant delivered the oil pursuant to the terms of the contract appellee could have operated his refinery for about 2½ years from the date of the execution of the contract; that he kept up and was familiar with the daily monthly average price of crude oil and that from his own knowledge and experience and by reference to the memorandum he was able to state that the prices reflected in the memorandum accurately portrayed the market price of crude oil during the

period from July 2, 1931 through September 2, 1933; that such figures reflected his own personal knowledge of the market price of East Texas crude oil of 39 degrees Baume test during such period, and that although the memorandum was sent to him in a letter dated March 21, 1939, such memorandum actually covered the prices of crude oil from the period July 2, 1931 through September 2, 1933; that the appellee dealt entirely in refined products and that through the oil journal he and the appellee kept up with the prices of crude oil and finished products and that when he purchased oil such was purchased at the posted price or better. We think the testimony shows that the witness Earnest was a competent witness and the objection made to his testimony goes to the weight only. We think this view is in accord with the rule announced by our Supreme Court in Texas & Pacific Ry. Co. v. Donovan, 86 Tex. 378, 25 S.W. 10. See St. Louis S. W. Ry. Co. v. Barnes, Tex.Civ.App., 72 S.W. 1041, point p. 1043; Walker Grain Co. v. Denison Mill & Grain Co., supra, point 4 on page 558 of 178 S.W.; Chicago R. I. T. Ry. Co. v. Halsell, Tex.Civ.App., 81 S.W. 1241; Texas & P. Ry. Co. v. W. Scott & Co., Tex.Civ.App., 86 S.W. 1065; King v. Shawver, Tex.Civ. App., 30 S.W.2d 930; St. Louis & S. F. Ry. Co. v. Lane, Tex.Civ.App., 118 S.W. 847; Galveston H. & S. A. Ry. Co. v. Karrer, Tex.Civ.App., 109 S.W. 440; 17 Tex.Jur. 528, 529, 730, 750 and 751.

■ Point 13 is that "the trial court erred in overruling Special Exception contained in paragraph VI of appellant's first amended original answer, directed to all of paragraph 7 of appellee's original petition." We have considered this point very carefully and since the cause was tried without the aid of a jury and since the record as a whole does not show that appellant could have been prejudiced thereby, it is overruled under authority of Rule 434, T.R.C.P. See also American Mutual Liability Co. v. Parker, 144 Tex. 453, 191 S.W.2d 844, points 4–6, at page 848.

Since it is our view that no reversible error was committed by the trial court, the judgment is affirmed.

LESTER, C. J., took no part in the consideration and disposition of this case.

On Appellant's Motion For Rehearing.

TIREY, Justice.

Point 1 in appellant's motion for rehearing is: "The Court of Civil Appeals erred in failing to hold that the furnishing of tank cars by the buyer-appellee was a condition precedent to the duty of the seller-appellant to deliver oil free on board into such cars and, the buyer having alleged but having offered no evidence of performance of such condition, the seller's promise to deliver never was activated into a duty and, a fortiori, never was breached."

■ Our view is that Point 1 assumes a factual situation contra to the undisputed evidence before the court and the legal inferences that may be drawn therefrom and that by reason thereof the rule of law presented in Point 1 is not applicable here for reasons hereinafter briefly noted. It is without dispute that appellant undertook to comply with the contract for the month of July, 1931, and that under the terms of the contract he was obligated to ship to appellee the sum of 8,000 barrels of oil for such month, but shipped only 3,566.40 barrels, the last shipment having been made on the 28th day of July. Appellee's letter of July 31st addressed to appellant has been quoted in our original opinion. This letter makes reference to an oral demand made by appellee of appellant under date of July 27, 1931 and this letter requested appellee to ship the twenty cars of crude for August at the rate of two cars per day for the first ten days of August, 1931, and further stated that "failure to furnish said 20 cars as per contract will force the shut down of my refinery * * *." Appellant made no reply to appellee's letter of July 31st and made no complaint to appellee that he had failed to furnish him tank cars in which to ship the oil, nor did he tender any testimony to the effect that he was in position to comply with his contract for the month of July and would have done so had not appellee failed to furnish the tank cars. Moreover, the trial court had before it the undisputed

testimony to the effect that during the months of July, August and September, while appellant was furnishing appellee with 3,566.40 barrels of oil instead of 8,000 barrels per month as contracted for, appellant was furnishing 13,665.50 barrels of oil to the Sun Pipe Line Company for the sum of $5,205.57, or about 16 cents a barrel more than appellant had contracted to sell it for to appellee; that during the months of October, November and December, 1931, the appellant sold 12,616.41 barrels of oil to Shell Petroleum Company for a sum total of $9,786.12, which was $8,019.83 more than appellant had contracted to sell it for to appellee. Under the foregoing undisputed and unexplained situation, we think that it was appellant's duty to tender testimony which would legally excuse his non-performance of the contract and absent such proof the trial court was justified in drawing the inference and making the implied finding that appellant's failure to deliver the oil to appellee was due to the fact that appellant could sell it for a greater price to other purchasers and not to appellee's failure to furnish the tank cars. We think this implied finding is established by direct and circumstantial facts that are reasonably satisfactory and of a convincing character. See Stewart v. Miller, Tex.Civ.App., 271 S.W. 311, point 13, at page 316 (writ ref), and 17 Tex.Jur. sec. 409, p. 907, sec. 410, p. 909; also 17 Tex.Jur. sec. 55, 62 incl., pp. 244–257. See also San Jacinto Oil Co. v. Texas Co., 47 Tex.Civ.App. 477, 105 S.W. 1163; Diamond State Iron Co. v. San Antonio & A. P. R. Co., 11 Tex.Civ.App. 587, 33 S.W. 987; Von Harten & Clark, Inc., v. Nevels, Tex.Civ.App., 234 S.W. 676; Burleson & Baker v. Sugarland Industries, Tex.Civ.App., 240 S.W. 669; 37 Tex.Jur. 362, 365; Culp v. Sandoval, 22 N.M. 71, 159 P. 956, L.R.A.1917A, 1157; 46 Amer. Jur. 355; Security Banking & Investment Co. v. Flanagan, Tex.Civ.App., 241 S.W. 702, 703, point 8, at page 707.

■ Appellant in his written and oral argument stated in effect that the testimony of the witness Shelby to the effect that appellant Vise had told him that as soon as he got a connection with the Sun Oil Company that he would breach this contract (we have previously set out this testimony in the original opinion) is of no probative value because such information was not communicated to Foster. We are not in accord with this view. Since Foster's letter of July 31st complained to Vise of his failure to ship him the oil as provided for in the contract for the month of July and further confirmed the oral order of July 27th for the twenty cars of crude to be shipped to him at the rate of two cars per day for the first ten days of August, 1931, Foster's rights were not prejudiced because he did not know of the secret intentions of Vise at the time the contract was made or at the time it was breached, but Foster's rights are predicated upon the fact that Vise did breach his contract, and under the record here made we think that the conversation that Vise had with Shelby was admissible and was a circumstance for the court to take into consideration in determining whether or not Foster had breached his contract by failure to furnish the tank cars. Surely Vise could not sit by in the trial with knowledge of the evidence adduced and make no explanation of his failure to ship the oil. See 17 Tex. Jur. sec. 409, p. 907, sec. 410, p. 909; Stewart v. Miller, supra. Appellee pleaded that he furnished the tank cars, that he made both oral and written demands on appellant for the oil and that he was forced to shut down his refinery because appellant did not ship the oil that he bound himself to ship, and that appellee tried to buy oil elsewhere in order to keep his refinery running. Moreover, appellant failed to deny specifically in his pleadings that appellee furnished the cars. He also failed to offer any proof that appellee failed to furnish cars, and the proof being uncontradicted that appellant did not intend to carry out his contract at the time he entered into it and that he was going to sell the oil to the Sun Pipe Line Company and that he did so when the opportunity presented itself (and received a greater price for his oil), it is our view that the foregoing undisputed factual situation distinguishes the case at bar from the case presented by appellant in his brief and in his oral argument.

We have carefully considered each of the grounds in appellant's motion for rehearing and we believe they are without merit and, so believing, appellant's motion for rehearing is overruled.

LESTER, C. J., took no part in the consideration and disposition of this motion.