## THE DIAMOND STATE IRON CO. v. SAN ANTONIO & ARANSAS PASS RAILWAY CO.

### No. 616.

**1. Insolvent Corporation—Liability After Receivership—Estoppel.**

Where the property of an insolvent corporation has been placed in the hands of a receiver and has passed out of such hands back to the corporation, without a sale, the unpaid debts of the corporation follow the property by force of the statute, whether or not such debts have been presented by intervention in the receivership proceedings; and the failure to so present them, or to urge them before the reorganization committee, does not estop the creditors from asserting such debts against the reorganized corporation.

**2. Same—Receivership as Breach of Contract.**

Where a railway corporation is a party to an executory contract for the purchase of material for its road, the fact of the subsequent insolvency of such corporation and the placing of its property in the hands of a receiver is not of itself such a breach of the contract on its part as will relieve the other party from the necessity of performing or placing himself in a position to perform before he can claim damages for a breach of the contract.

**3. Same—Insufficient Evidence.**

For evidence held insufficient to show that a seller who had contracted to sell and furnish steel rails to a railway corporation, had placed himself in a position to perform the contract, so as to be entitled to recover for the breach thereof, see the opinion.

**4. Breach of Contract—Measure of Damages.**

Where, on breach of a contract by the buyer to purchase articles to be manufactured by the seller, the latter uses the material procured to fill the contract in manufacturing other articles which are sold at a profit, in estimating the damages for the breach, such profits are to be deducted from the profits the seller would have realized on the contract.

APPEAL from Bexar. Tried below before Hon. R. B. GREEN.

*Barnard & McGown,* for appellant.—1. The possession of a railroad and its equipments, which is taken by a receiver under an appointment by the court, changes no debt, obligation or liability of the company, but is merely a holding by the same title, subject to the same contracts, limitations, liabilities and conditions under which the railroad company held the property at the time of such appointment. Edwards, Receivers, 3, 4, 12, 165; 2 Dan. Ch., 28, sec. 3; Field on Corp., secs. 419, 42; High, Receivers, secs. 5, 318, 319, 370; Beach, Receivers, secs. 395, 340; People v. Barrett, 91 Ill., 422; Exp. Co. v. Railway, 99 U. S., 191; Hide v. Lynde, 4 Comst. (N. Y.), 387; Curtis v. Leavitt, 15 N. Y., 1; Ship v. Harwood, 3 Atk., 564; Portman v. Mill,

8 Law J., 165; Delany v. Mansfield, 1 Hog., 235; In re Colvin, 3 Md. Ch., 280; Williamson v. Wilson, 1 Bland (Md.), 418; H. K. Chase's case, 1 Bland (Md.), 206; Ellicott v. Warford, 4 Md., 80; Ellis v. Railway, 107 Mass., 1; Lincoln v. Fitch, 32 Me., 469; Devendorf v. Beardsley, 23 Barb., 565; Williams v. Babcock, 25 Barb., 109.

2. Where a seller of personal property has to buy the property to be furnished under his contract, his measure of damage and his only remedy, upon its breach, is the difference between the contract price and the market value of the property at the time of its breach. Welden v. Texas Continental Meat Co., 65 Texas, 487; Woldert v. Arledge, 4 Texas Civ. App., 697; Adler v. Kiber, 5 Texas Civ. App., 417; White v. Land Co., 75 Texas, 465; Lanka v. Chatham, 2 Texas Civ. App., 315; 3 Parson on Cont., sec. 209; Sedgwick on Damages, p. 595; Am. & Eng. Encl. Law, "Damages," p. 30; 2 Suth. Damages, 359.

3. That the defendant's inability or refusal to go on with the contract is a breach, is beyond cavil; and in support of it we cite a few cases. Ulman v. Babcock, 63 Texas, 69; Lowell v. Ins. Co., 111 U. S., 264; United States v. Behan, 110 U. S., 343; Jones v. U. S., 96 U. S., 24; Butler v. Butler, 77 N. Y., 472; Woolner v. Hill, 93 N. Y., 576; Lyman v. Lyman, 133 Mass., 414; Bishop on Contracts, sec. 837-840; Enc. Law Contracts, 77-82.

*Franklin & Cobbs,* for appellee.—There being no evidence in the record legally sufficient to authorize a verdict for plaintiff, and none of the rejected evidence being admissible under plaintiff's pleadings, and there being nothing in said rejected testimony to authorize a judgment for plaintiff, if it had been admitted, this case should be affirmed. Shepard v. Weiss, 28 S. W. Rep., 355; Sherman v. O'Connor, 29 S. W. Rep., 1353; City of Laredo v. Russell, 56 Texas, 398; Dennison v. League, 16 Texas, 399; Elting v. Dayton, 17 N. Y. (Sup.), 849; Roy v. Boteler, 40 Mo. App., 213; Stephenson v. Bassett, 51 Texas, 544; Baker v. Higgins, 21 N. Y., 398; Cleveland v. Rhodes, 121 U. S., 255; Catlin v. Tobias, 26 N. Y., 218; Jones v. United States, 96 U. S., 24; Cornell v. Cornell, 96 N. Y., 115; Husted v. Craig, 36 N. Y., 221; Oakley v. Martin, 11 N. Y., 25; Bishop on Contracts, sec. 1420; 2 Suth. on Dam., 363; 3 Am. and Eng. Enc. of Law, 911; Lawson on Contracts, sec. 447; 2 Story on Contracts, sec. 1335; Clarke on Contracts, sec. 266, and note 85.

JAMES, CHIEF JUSTICE.—This suit was by appellant alleging breach by defendant of the two contracts set forth in the following conclusions of fact. As defenses it was claimed that appellant did nothing toward the fulfillment of the contract of January 20, 1890, and elected not to perform it; that at the time when the contract of April 15, 1890, became performable, appellant was unable to perform it; that on July 14, 1890, defendant's property was placed in the hands of receivers, and appellant did not intervene to set up the claims sued on; that in March, 1891, appellant asserted and had settled by the reorganization committee

another claim it had for $120,000 and interest, but refrained from presenting the claims now sued on, thereby waiving or abandoning such claims. A verdict was rendered for defendant.

' *Conclusions of fact.*—The following are the two contracts, for the breach of which the appellant brought suit against appellee for damages, claiming $70,000 in reference to the one dated January 2, 1890, known in the briefs at the "fastenings" contract, and $25,000 in reference to the one dated April 15, 1890, known as the "rail" contract.

"New York, January 20, 1890.

"Diamond State Iron Co.,
     "Wilmington, Delaware:

"We have this day bought from you (Material) sufficient angle fish plates, bolts with square nuts and 5½x9-16 R. R. spikes, to lay thirty-five thousand (35,000) tons of sixty pounds to the yard steel rails of the standard Pennsylvania Railroad pattern, sample pair of angle plates such as used by them on this weight of rail, to be sent to Messrs. Swenson & Sons, 216 Broadway, New York City, by the sellers for the buyers immediately. All of the articles to be made in a workmanlike manner, and to stand a tensile strain of forty-five thousand (45,000) pounds to the square inch. (Delivery.) At the works of the seller in Wilmington, Delaware, in about equal monthly proportions, commencing in February, 1890, and ending in January, 1891. Should the buyers request the withholding of any month's shipment, the bill to be presented same as though the goods had been shipped and settlement made from date of bill, though sellers are to make no charge for storage on same. (Price.) For angle fish-plates and spikes, two and one-half (2½) cents per pound. For button head bolts, with square nuts, three and one-half (3½) cents per pound. (Terms of Payment.) Cash on presentation of invoice and shipping receipts at Wilmington, Delaware, for each shipment, at the office of Messrs. Swenson & Son, 216 Broadway, New York City. (Remarks.) The Diamond State Iron Co. are not to be responsible for detentions in deliveries occasioned by strikes of their workmen, or destruction of or serious damage to their works, by fire or the elements, or any cause beyond their control.
     (Signed)        "SAN ANTONIO & ARANSAS PASS R'Y CO.,
                              "By U. LOTT, President."

"New York, April 15, 1890.

"Diamond State Iron Co.,
     "Wilmington, Delaware:

"We have this day bought from you (Matérial) about twenty-two hundred (2200) tons of steel rails, 60 pounds to the yard, to be made by the Bethlehem Iron Co., of Bethlehem, Pa., and to be of the 60 ℔s. standard Pennsylvania Railroad pattern and drilling. (Delivery.) At the works of the Bethlehem Iron Co., at Bethlehem, Pa., at any time between this date ·and July 31, 1890, by giving thirty days' written notice to the sellers, but they must be taken by the buyers not later than July 31, 1890.

(Price.)    Thirty-five dollars per ton of 2240 ℔s.    (Terms of Payment.) Cash in New York City on presentation of invoice with written notice from the Bethlehem Iron Co. that the rails will be ready for shipment in three days.  (Remarks.)  The Diamond State Iron Co. are not to be responsible for detentions in deliveries occasioned by strikes of their workmen, or destruction of or serious damage to their works by fire, or the elements, or any cause beyond their control.

(Signed)         "SAN ANTONIO & ARANSAS PASS R'Y Co.,

"By U. LOTT, President."

The monthly deliveries of the fastenings were postponed from time to time at the instance of defendant's president, likewise performance of the rail contract, until June 27, 1890, when appellant received the following letter from defendant's president:—

"New York, June 27, 1890.

"Diamond State Iron Co.,

"Wilmington, Delaware:

"Gentlemen:—Your Mr. Smyth called this morning, and we promised to let him know by the first prox. whether we would use 56 or 60-pound section rails for the rails we bought of you some time ago, to be made by the Bethlehem Iron Co.   Whichever weight we use, you will understand they are to be Penn. Railroad standard pattern and drilling. We do not want them before the last day of the contract, and we are, therefore, just able to give you the thirty days' notice required by it. The bill, when ready, you can present at Swenson's.   We shall not need any of the fastenings on the new contract until these rails are shipped, but you can put the whole order forward so as to make delivery commence in August.

"Yours truly,                .   "U. LOTT,

"Pres't San Antonio & Aransas Pass Railway Company."

Lott did not notify appellant by the 1st of July as to the 56 or 60 ℔. rails, and no further communication passed from defendant or its president to appellant respecting the matter until receivers were appointed. On July 14, 1890, receivers were appointed for the defendant corporation, and after about two years of administration of its affairs by the receivers, it was allowed to resume its property, through a reorganization committee, without a sale.   On July 14, 1890, Mr. Lott wrote appellant a letter notifying them of the receivership.   On July 23, 1890, appellant wrote the receivers enclosing a copy of the "fastenings" contract, which letter and reply thereto is as follows:

"July 23, 1890.

"Mr. B. F. Yoakum,

"Receiver San Antonio & Aransas Pass Railway Co.,

"San Antonio, Texas.

"Dear Sir:—We enclose herewith copy of contract with President Lott for about 2200 tons of steel rails, dated April 15, 1890; also a copy of a letter from Lott dated June 27, ult., bearing upon said rail contract.   We

also enclose you copy of the order for fastenings referred to in above letter, all of which we give you for information.   Having made the above contract with President Lott in New York, we thought it probable that he might not have copies of them in San Antonio.   The rails which we have bought from the Bethlehem Iron Co., we cannot postpone, as we cannot control them.   The rail people have been pressing us for instructions to make these rails, and we must take them according to our contract prior to August 1.

"We tried to find Mr. Lott in New York by telegram and in person, and also wired him in San Antonio, asking him for the information promised us in his letter of June 27, above referred to, in order that we could give the necessary data to the rail mills to make and ship this parcel of about 2200 tons of steel rails.   We failed to get any reply from Mr. Lott, and we telegraphed you July 19:   'We sold President Lott, under contract, April 15, last, twenty-two hundred tons Bethlehem sixty pounds steel rails; shipment before July 31 instant.   Can you give us drilling instructions and shipping directions at once?   Unless you comply with the contract, we shall have to sell the rails for your account, charging you with any loss.   Telegraph quickly what we shall do, as we must move these rails.'   And we have your reply of July 19:   'As receivers of the San Antonio & Aransas Pass Railway, we do not feel authorized to give a definite reply on the contract referred to.   Would suggest you allow the matter to remain in abayance a few days.'

"We wired you again July 23:   'Telegram received.   Can't you possibly give us the information asked for in Saturday's telegram, to reach us before noon to-day.   The rail men are pressing us for this information, and we must comply with our contract;' to which we have no response.   We confirm the above telegram, and would say that we much regret that we have no other alternative concerning these rails than to act in accordance with our telegram to you of the 19th instant.

"Yours truly,         "GEORGE W. TODD, President."


"San Antonio, Texas, July 28, 1890.

"Geo. W. Todd, Esq.,

"President Diamond State Iron Co.,

"Wilmington, Del.

"Dear Sir:—We are in receipt of your favor of the 23rd.   As we wired you July 19, we do not feel authorized to give you any instructions regarding shipment of rails referred to.   As this is a transaction prior to the receivership, we prefer at present not to undertake to handle the matter in any way.   Later on, if we need the material, we will take the matter up with a view of purchasing where we can get it cheapest.

"Yours truly,                    "B. F. YOAKUM,

"J. C. MCNAMARA,

"Receivers."

Two more letters were written by appellant to the receivers, which also were not answered.

"October 31, 1890.

"Messrs. B. F. Yoakum and J. S. McNamara, Receivers,

"San Antonio & Aransas Pass Railway Company,

"San Antonio.

"Gentlemen:—We hereby notify you that the steel rails purchased from us by the San Antonio & Aransas Pass Railway Company under our contract with its president, Mr. Lott, dated April 15, 1890, a copy of which we furnish you with our letter of July 23, will be rolled immediately, as the Bethlehem Iron Co. have demanded peremptorily that they must have shipping directions, and they will wait no longer. You will recall our letter of July 23 stated our case clearly.

"We have held the rail mill back all we possibly could, but something must now be done. We have notified Mr. Lott and enclose copy of our letter to him. Failing to receive shipping instructions from you, we have orderd the rails piled in the Bethlehem Company's yard, which entails an additional expense of from 25 to 50 cents per ton. The bill for the rails will be presented to S. M. Swenson & Sons' office, 216 Broadway, New York, as per President Lott's instructions under date of June 27, 1890, and if not paid, we shall be forced to sell the rails to the highest bidder, and charge the San Antonio & Aransas Pass Railway Company with any loss sustained.

"Yours truly,          GEO. W. TODD, President."

"December 19, 1890.

"Messrs. B. F. Yoakum and J. S. McNamara,

"Receivers S. A. & A. P. Ry. Co.,

"San Antonio, Texas.

"Dear Sirs:—We refer again to our recent correspondence upon the subject of steel rails, as per contract we have with Mr. Lott, president, dated April 15, 1890, for about 2200 tons of Bethlehem steel rails, terms being cash in New York City on presentation of invoice. In accordance with said contract, we have presented bill for same to Mr. Evans, 42 Wall Street, and also to S. M. Swenson & Sons, New York, both of whom report no funds to meet your obligations. We therefore formally wish to notify you of our compliance with the contract, and must request you to kindly have settlement made for rails, as per enclosed bill, by return mail.

"Your kind attention to our request will be appreciated.

"Yours truly,

"GEO. W. TODD, President."

The appellant did not manufacture rails, but had a contract with the Bethlehem Iron Co., a manufacturer of such rails, to cover the kind and quality of rails demanded by its contract with defendant, which contract with the Bethlehem Iron Co. required that appellant should give the Bethlehem Iron Co. thirty days' notice when deliveries were

desired.  Appellee knew that appellant was to procure the rails by such purchase.  Appellant was a manufacturer of the articles mentioned in the fastenings contract.

The rails were not procured by appellant to be rolled at the factory until some time in December following, when they were made as appellee's contract required, as appear from letters to the receivers, of date October 31, 1890, and December 19, 1890.  The rails were sold by appellant in the market for the best value obtainable, something less per ton than they had cost appellant, and appellant sues for the difference between this and the contract price.  The articles mentioned on the fastenings contract were never manufactured, and the damage claimed in this behalf is the difference between what the production of the articles would have cost appellant and the price contracted to be paid by appellee.

*Opinion.*—We will first treat of the defense of waiver.  The property having passed out of the receivers' hands to the corporation without a sale, all of its unpaid debts followed the property by force of the statute, whether or not they had been presented by intervention.  The evidence is that the claims sued for were not presented against the receivers by intervention, or otherwise urged against them, nor were they called to the attention of the reorganization committee.  Appellant had another claim for a large amount which it urged and had paid through the committee, but in reference to these claims it (appellant) remained passive during the reorganization.  This is the extent to which the evidence goes on the subject, and it seems to us clear that it does not make a case of estoppel.  No act of fraud was done from which it could be said that the committee was induced to act upon the fact that the claim which was presented was the only one held by appellant.  The failure of appellant to assert these demands during the period of receivership and reorganization, under the circumstances shown by this record, was no obstacle to its subsequent assertion of them.

The court, however, submitted to the jury this issue of waiver, and they were directed to find in favor of defendant if they found it sustained by the evidence.  This was an error which may be responsible for the verdict, and for which the judgment must be reversed, unless the testimony before the jury, together with what was offered by plaintiff and rejected, would justify no other disposition of the case than that made by the judgment.

It is claimed by appellant, among other things, that in executory contracts of this nature, the becoming insolvent of one party, and the appointment of a receiver for his property, constitutes a breach of the contract on his part, and relieves the other party who is willing and able to perform from the necessity of performing or placing himself in a position to perform, and that the latter has then and there his cause of action.  The rule sought to be applied is the general one that where a party by his act places it out of his power to perform a contract, the

other may at once bring an action against him for a breach thereof. 3 Am. & Eng. Enc. of Law, 907, and cases cited. Whatever may be said of other cases, the rule does not seem to apply to a railway corporation whose property is placed in the hands of a receiver. We must so hold, if we understand the decisions on the subject in this State. Brown v. Warner, 78 Texas, 543; Howe v. Harding, 76 Texas, 17.

These cases are to the effect that such receivers are not bound to carry out the contracts of the corporation, but may adopt them and execute them so far as beneficial to the purposes of the administration. The court, in any instance, would have the power to require the receivers to carry out such a contract. It must follow from these principles that it is not until the receivers refuse or fail to recognize and observe the contract that a breach thereof takes place, and that the fact of receivership is not per se a breach.

Appellant states in its brief, "That the placing of the property in the hands of the receiver deprived the defendant of the ability to carry out its contract, and this act was a breach of the contract by defendant, and was so treated by plaintiff, because from time to time all plaintiff ever did or attempted to do concerning the 'fastenings' contract was to send receivers a copy of it on July 23, 1890, and in December, 1890, placed its claim for damages in the hands of its attorney for collection, and the frequent bringing it to the attention of the reorganization committee, and finally the institution of this suit." Also that, "The testimony of all the witnesses is to the effect that none of the fastenings, nuts, bolts, or fish plates or other things called for in that contract were ever manufactured, but that the contract was treated as breached by the plaintiff (defendant) upon receipt of the letter of Mr. Lott advising plaintiff that the road had been placed in the hands of the receiver."

If such be really the testimony, and our conclusions above expressed be correct, it would seem that plaintiff had elected not to proceed with the performance of the contract for fastenings before any act of refusal or other breach had been created by the action of the receivers. We rather think that the correspondence of appellant with the receivers tends to show that the former did not regard the appointment of receivers as a breach of the contract.

It is clear that the receivers, by their telegram and letters, particularly their letter of July 29, 1890, indicated their unwillingness to be bound by the contracts. Under such circumstances, appellant would have had a cause of action against the corporation, provided it was made to appear that but for this refusal of the receivers, it was willing and able on its part to have performed the contract at the time fixed for performance. Appellant could not have the right of action, if, before any act of breach on the part of the corporation or the receivers, it had placed itself in a position of inability to perform.

The delays procured by defendant in the furnishing of the rails and fastenings culminated on June 27, 1890, when the president of defendant company, by his letter of that date, gave plaintiff the thirty days'

notice required for delivery of rails and fastenings, fixing the date at which performance on the part of plaintiff was to be ready, viz., July 31, 1890. From that time on, defendant did nothing that would warrant plaintiff in assuming that delivery could be made at a later date. The only ground upon which such a view could have been based was the fact that Lott stated in this letter that defendant would let appellant know by July 1st whether they would use rails of the weight of 56 or 60 ℔s. It appears that appellant was willing for defendant to designate rails of 56 ℔s. in lieu of those of 60 ℔s., required by the contract, and the latter, in giving the notice for delivery to take place or begin on July 31, promised to indicate its selection by July 1. When that day passed without the designation being made, it was incumbent on appellant, if it intended to hold defendant to its contract, to proceed to have the rails made of the weight the contract required. The right or duty to make the selection in weight of the rails was not a part of the contract, and had not become such; but was merely a matter of privilege appellant seemed willing to extend, if desired by appellee. Appellee promised to exercise it by July 1st, and failed to do so, and thereafter it was clearly the duty of appellant to prepare to perform the contract as it was, in the absence of any further waiver or delay that was chargeable to defendant. As a matter of law, we do not think the failure of defendant to indicate its preference as to the rails would, after July 1st, excuse plaintiff from doing what was necessary on its part in order to be in position to perform at the time fixed. If, therefore, the time for performance arrived, and it was not able to perform on its part, and this inability was not due to or excused by some act of the corporation or the receivers, plaintiff was not entitled to recover.

The testimony is that appellant was required by its contract with the Bethlehem Iron Co. to give it thirty days' notice for delivery of rails, and the letters of appellant show that the Bethlehem Iron Co. insisted on the thirty days' notice, and nowhere is there any evidence or indication that appellant would have been able to have them ready in the time that elapsed from the date of the receivership to July 31. Plaintiff unwarrantably delayed this matter from the date of Lott's notice to the date of receivership (July 14), and did not communicate with the receivers on the subject until July 19. There remained but eleven days, and the conduct of the receivers at and after that date is immaterial in view of the fact that plaintiff had already so delayed that it could not have had the rails ready for delivery on July 31, had the receivers been ready and willing to carry out the contract. We do not discover in this record testimony that would warrant the jury in finding that appellant, after the delay it indulged in, could have been able to comply with its contract at the time required, but what evidence there is on the subject indicates the contrary, and for the reason that there is nothing in the evidence excusing performance on its part, the verdict, so far as it relates to the rail contract, was correct.

We will now consider the branch of the case concerning the contract

for fastenings. In this regard it will not be necessary to determine who was responsible for the non-fulfillment of the contract. Assuming that the receivers were, and that appellant was, willing and able to have complied therewith in every respect, still it seems to us upon the evidence that the verdict was the only verdict which the jury could have rendered. The difference between the cost of producing the "fastenings" and the price at which they were contracted to defendant, which was the measure of damages in such case, was proved. But it was also proved by appellant's witnesses that the materials which appellant had provided itself with to fulfill this contract, were utilized by it in manufacturing other articles from which it realized a profit. Appellant's officers who were witnesses left the testimony in this state, saying that they did not know the extent of the profit, one witness stating that it would take a week to arrive at it. To our minds it is clear that the damages ascertained by the measure aforesaid should have been credited with these profits. It may be such profits exceeded the profits appellant would have derived from this contract. The jury were not enabled by the testimony furnished them to arrive at appellant's damages, or to say that it had suffered any damage from the non-fulfillment of said contract. The verdict for defendant was therefore the proper one.

We need not enter upon a consideration of the action of the District Court in overruling appellee's plea in abatement. That portion of appellee's brief which mentions this subject is not such as to engage our attention, under the rules. The ruling was in favor of appellant, and of course it is in no position to complain of it.

The evidence ruled out or admitted according to assignments of error 1, 2, 3, 5 to 26 inclusive, had the rulings been to the contrary of what they were, was not such as would have affected the conclusion that the verdict rendered was necessary from the testimony.

The fourth assignment discloses no error. Upon our view of the case it is immaterial what the charges were.

The judgment will be affirmed.

*Affirmed.*

Delivered November 20, 1895.

Writ of error refused.