## BURLESON & BAKER v. SUGARLAND IN-DUSTRIES.   (No. 8164.) *

(Court of Civil Appeals of Texas. Galveston. March 30, 1922. Rehearing Denied April 20, 1922.)

1. Sales ☞81(4)—Contract held to contemplate delivery after time specified, on failure of buyer to give shipping directions.

A contract for the sale of sugar to be manufactured, and calling for "shipment as wanted within June, 1920," but providing that buyers should furnish shipping instructions and that, on failure to do so, the seller could make arbitrary shipments after the expiration of the specified time, and further providing that the seller should not be liable for nondelivery if caused by unavoidable calamity, held to give to the seller the right to make deliveries within a reasonable time after June, where performance was prevented after that date by a breakdown of machinery in the seller's plant, and the buyers failed to give shipping directions.

2. Evidence ☞265(17)—Sales ☞152—Letter from broker to buyer held not to excuse buyer from giving shipping directions, and was not binding on seller.

A contract for the sale, by plaintiff to defendants, of a quantity of sugar to be manufactured, "shipment as wanted within June, 1920," provided that buyers should furnish shipping directions and that, in case of failure to do so the seller might make arbitrary shipments after the specified time, and also provided that the seller should not be liable for nondelivery if caused by unavoidable calamity. On June 12, 1920, defendants received a letter from the broker from whom the sugar was purchased, but who was not plaintiff's agent, informing them that there had been a serious breakdown in plaintiff's refinery and that defendants would be advised as soon as operations were resumed. Held that such letter did not amount to a representation that shipments could not be made during June, and did not excuse defendants from giving shipping directions, and, in any event, such letter was not binding on plaintiff.

3. Sales ☞151—Seller not required to set aside goods for fulfillment of particular contract.

Where a contract for the sale of sugar to be delivered during June, upon shipping directions to be furnished by the buyer, provided that the seller might make delivery after June, if the buyers failed to give shipping directions, and that the seller should not be liable for delay caused by unavoidable calamity, the sell-er was not required to appropriate and set aside sufficient refined sugar to fulfill the contract, where the buyer failed to give shipping directions, if it was at all times able and willing to perform the contract.

4. Sales ☞384(2)—Measure of damages for refusal to accept delivery stated.

Where a contract for the sale of sugar called for delivery during June, but provided that the seller should not be liable for delay arising from unavoidable calamity, and that the seller might make deliveries after the time indicated if the buyer failed to give shipping instructions, the measure of damages for the buyer's refusal to accept delivery after the time specified was the difference between the market and contract price at the time the buyer repudiated the contract, and not such difference on June 30th, delay in performance having occurred on account of a breakdown in seller's plant, and the buyer having wrongfully refused to give shipping directions.

Appeal from District Court, Fort Bend County; M. S. Munson, Judge.

Action by Sugarland Industries against Burleson & Baker. Judgment for plaintiffs, and defendants appeal. Affirmed.

Sanford & Wright, of Eagle Pass, for appellants.

Peareson & Peareson, of Richmond, and A. M. Waugh, of Sugar Land, for appellees.

GRAVES, J. In this appeal Burleson & Baker complain of a judgment for $5,487 rendered against them below as damages to the sugar company for their breach of the following contract with it:

"Contract                           No. 9333.

"Imperial Sugar Company, Sugar Land, Texas.

"Sugar Land, Texas, April 26, 1920.

"Broker IBCO—FML.

"Confirming sale as manufacturers to Burleson & Baker, Eagle Pass, Texas. 720 bags, subject to delay. Shipment as wanted within June, 1920. Price basis, 27c. Terms: Net 30 days, or 2 per cent. discount seven days after arrival at destination. Positively no discount will be allowed if remittance is made later than seven days after arrival of car at destination. Buyer must furnish shipping instructions for all sugar covered by this contract for shipment within the time specified herein. Failure on the part of the buyer to so furnish shipping instructions and specifications shall give the seller the right to make arbitrary shipments of the amounts due the buyer herein, at seller's option, after the expiration of the said specified time. This contract is not subject to countermand. Seller not liable for nondelivery if caused by strikes, fires, destruction of refinery, the act of God or any other unavoidable calamity. All invoices for sugar covered by this contract are payable at Sugar Land, Texas, in New York, St. Louis, Kansas City, Galveston, Houston, or Dallas exchange. Local checks will not be accepted. No guaranty—prices shown above are not sub-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 31, 1922.

ject to market changes. Seller reserves the right to ship bill of lading attached.

"Imperial Sugar Company,
"By E. P. Coles."

The appellees, by motion, as well as in their brief, object to our considering a number of the assignments tendered by appellants, but inasmuch as we conclude that enough is properly presented to enable this court to determine the general issue as to the correctness of the trial court's judgment, the objections are not further discussed.

On the day of its date the contract as copied was in writing accepted by Burleson & Baker.

After introductory statements, including the making of the contract copied, the main fact findings of the trial court were these:

"(3) At the times herein mentioned, plaintiffs were engaged in refining sugar with mills at Sugar Land, Ft. Bend county, Tex., and of selling sugar and conducted its business of selling sugar under the name of Imperial Sugar Company. Its course of business was to purchase large quantities of raw sugar, refine same, and to make contracts of sale thereof, and in this case it was contemplated that the sugars sold to Burleson & Baker by the contract hereinafter referred to would be refined in its mill in Sugar Land, Tex., and shipped as provided in the contract.

"(4) The defendants were importers, exporters, and wholesale dealers at Eagle Pass, Tex., in commodities, including sugar, and selling the same to merchants and retail houses and in this instance it was contemplated by defendants that they would resell the sugar to retail dealers. Sugar is a commodity with fluctuating value and was worth much less on July 18, 1920, and July 25, 1920, than it was during the month of June, 1920."

"(6) On June 11, 1920, the main engine of the sugar refineries of plaintiff at Sugar Land, Tex., broke down unavoidably, thus causing plaintiffs to be unable to refine sugar, but refining of sugar was resumed by the plaintiffs on June 19, 1920.

"(7) F. M. Lewis & Co. were sugar brokers with offices in San Antonio, Tex., and on June 12, 1920, sent to defendants the following letter:

"'June 12, 1920.

"'Gentlemen: We are just in receipt of advice from the Imperial Refinery that a serious breakdown in the plant had necessitated their closing down and that it was impossible at this time to state just how long they would be closed. We will advise just as soon as operations are resumed.

"'Yours very truly,
"'RWL–K.　　F. M. Lewis & Co.'

"In sending said letter, Lewis & Co. were acting in their own behalf and in furtherance of their own business and not as agents for the plaintiffs and especially were they unauthorized by the plaintiffs to use the last sentence in said letter. Plaintiffs did not know, until after the institution of this suit, that Lewis & Co., had sent to the defendants the said letter.

"(8) The following letter was sent to Lewis & Co. by the defendants, on July 13, 1920, but the contents thereof were not communicated to the plaintiffs until July 16, 1920, to wit:

"'Eagle Pass, Texas, July 13, 1920.

"'F. M. Lewis & Company, San Antonio, Texas—Gentlemen: You wrote us regarding the breakdown at the refinery, and as yet haven't heard anything from you. The sugar we had booked for June shipment at 27c. we will have to take quite a losing on today's market. So will you please cancel the order.

"'Yours very truly,
"'Burleson & Baker.'

"(9) On July 15, 1920, Lewis & Co. notified defendants that the refinery had then been operating for some time and requested the defendants to give shipping instructions on said 720 bags of sugar.

"(10) On July 22, 1920, Burleson & Baker, by letter, refused to furnish shipping instructions and notified plaintiffs that they were not bound to accept said sugar, which notice was received by plaintiffs about July 24, 1920.

"(11) Defendants did not, during the month of June, 1920, or any other time, give shipping instructions and specifications to the plaintiffs or to any one authorized by them to receive such instructions. Had shipping instructions been given by defendants during the month of June, 1920, plaintiffs could and would have shipped said sugar in accordance with such instructions during said month.

"(12) Plaintiffs had existing, during the months of June and July, 1920, a large number of contracts with other parties, covering the sale and purchase of sugar, which contracts contained terms similar to the terms of the contract in this case, and the purchasers under said contracts had given plaintiffs shipping instructions and had requested plaintiffs to ship sugar thereunder. On account of the failure of the defendants to give shipping instructions, and on account of the delay caused by the said breakdown of said engine, and on account of the fulfilling of other contracts with other parties wherein shipping instructions had been given, plaintiffs in due time, under the belief until the receipt of said letters that defendants were not desirous that the sugar should then be shipped, did not deliver said sugars to a common carrier consigned to defendants until August 3, 1920, when it delivered 720 bags of sugar to common carrier at Sugar Land, Tex., freight prepaid, consigned to the order of the Imperial Sugar Company at Eagle Pass, Tex., notify Burleson & Baker and drew a draft on defendants, with bill of lading attached, for $19,545.83, which draft was indorsed to the defendants and duly presented. The defendants refused to pay the draft and accept said consignment of sugar, which contained 72,000 pounds, and said draft was protested at cost to plaintiff of $1.81. Thereafter the sugar was diverted and sold in the best and most available market for the best price then obtainable and brought $17.25 per 100 pounds, f. o. b., San Antonio, Tex. The reasonable cost of reselling said sugar was $36, which was paid by plaintiffs.

"(13) Under the circumstances, the said sugar was delivered to said common carrier by the plaintiffs within a reasonable time, in view of the terms of said contract.

"(14) The plaintiffs had not, prior to deliv-

ery of said shipment of sugar to said common carrier, set aside specified refined sugars with which to fill this contract, but at all times, from June 1 to August 3, 1920, had on hand both refined and raw sugars with which they could have and would have fulfilled said contract, had defendants given shipping instructions. After the execution of said contract, plaintiffs acquired raw sugars with which to fulfill this contract.

"(15) The market value of raw sugar at Sugar Land on each day from July 13th to 25th was 17.65 cents per pound, and the cost of manufacturing said raw sugar into refined sugar, that is, the condition the sugar required to be, under the terms of said contract, including delivery to said carrier was 1.7287 cents per pound.

"(16) The defendants did not fail to give shipping instructions on account of having received notice of the breakdown in plaintiffs' refinery nor on account of Lewis' promise to notify them when operations at the refinery should be resumed, but such failure was caused by the decline in the value of the sugar which was the subject of said contract, it having declined in value much below the contract price therefor.

"(17) The said defendants breached and repudiated said contract by their letter of July 13th, and also by their letter of July 22, 1920.

"(18) It does not appear from evidence that defendants were at any time ready, willing, and able to perform their part of said contract."

. On request of appellants, the court stated additional findings, in substance: (1) That on June 12, 1920, the sugar company both wired and wrote Lewis & Co., the brokers at San Antonio, of the breakdown of the engine at the refinery and that it would be at least two weeks before resumption of sugar shipments, requesting them to notify the trade that their shipments would be rushed "all possible" when operations were resumed, and advising that, in meantime, the brokers would be notified of any change in its schedule; (2) that the breakdown of June 11th at the mill came within the "unavoidable calamity" clause of the contract; (3) that the provision of the contract, giving the sugar company the right to make arbitrary shipments on failure of the buyer to furnish shipping instructions during June meant that "if defendants, by reason of their fault, failed to furnish shipping instructions during June, that plaintiffs might arbitrarily dictate the shipping specifications, but that shipment had to be made within a reasonable time after June 30th"; (4) Burleson & Baker had no notice or knowledge that operations at the mill had been resumed about June 19th, until July 16, 1920, when they received a letter from the brokers, Lewis & Co., in response to their own letter to the brokers of July 13th, set out in foregoing finding No. 8, requesting a cancellation of the order; (5) certain correspondence between Lewis & Co. and one or the other of the litigants, and be-

tween the litigants themselves, the material features of which are the refusal of the sugar company to cancel the contract, the declination of Burleson & Baker to furnish shipping instructions on the ground of not being bound to take the sugar, dated July 22, 1920, but received by the sugar company July 24, 1920, and notification to Burleson & Baker by the sugar company, dated July 30, 1920, that it would ship the sugar at once and hold appellants on the contract for any loss, in event they refused to accept and pay for it; (6) that, on June 4th, 18th, 25th, and July 9th, refined sugar for shipment within 30 days, or as late as December, was worth 22½ cents f. o. b. cars at Sugar Land, plus the freight rate; (7) that refined sugar for delivery during June was worth, approximately, a price ranging from 25 to 27 cents per pound; (8) that the appellee's damages were measured—

"by taking the value of raw sugar from July 13th to July 25th, which value was $17.65 per 100 pounds, or 17.65 cents per pound, and adding to that the cost of manufacturing said raw sugar into refined sugar, including delivery into cars, of 1.7287 cents per pound, and deducting the cost of the two from the purchase price defendants were to pay for the refined sugar, that is, 27 cents per pound, and by this process I arrive at the sum of $5,487 damages."

In their brief, appellants suggest that their principal reasons for a reversal are embraced within the following summary, presented as an assignment of error by them:

"The court erred in failing and refusing to render judgment herein in favor of defendants, because it appears, from the uncontroverted testimony, first, that the contract sued on was to have been performed during June, except for the provisions excusing plaintiffs for the delay during June and except for the provisions giving plaintiffs a reasonable time, after June 30th, in which to arbitrarily make shipment, upon failure of defendants to give shipping instructions during June; second, that, at the end of June, defendants having failed to give shipping directions, plaintiffs were in no position then, or at any subsequent period, to complain of the alleged breach by defendants for one or more of these reasons:

"(a) The letter which Lewis & Co. wrote to defendants on June 12th, at the instance of plaintiffs, with no further advice following, afforded defendants reasonable ground to believe, and they did believe, that plaintiffs' refining plant was out of commission for the balance of June, and until July 12th (on which date defendant wrote plaintiffs that they considered the contract terminated).

"(b) Plaintiff neither alleged nor proved that it shipped defendants the sugar within a reasonable time after June 30th.

"(c) Plaintiff neither alleged nor proved that it had appropriated and had on hand refined sugar to meet the defendants' contract within the contract period, that is, on or before June 30th.

"(d) It affirmatively appears that, if plain-

tiffs in fact had refined sugar to apply on defendants' contract during June, it did not so apply it, but, on the contrary, plaintiff otherwise disposed of said sugar.

"(e) It affirmatively appears that plaintiff made no effort whatsoever to preserve its contract rights until after the middle of July (the price of sugar having then dropped to a low figure), thereby neglecting to avail itself of its right to make shipment within a reasonable time after June 30th."

In further assignments, they also attack a number of the trial court's fact findings as being unsupported by the evidence. If consideration were given the matters thus suggested, we conclude that no reversible error is pointed out. As even appellants appear to concede, from the language used in the first sentence of their quoted assignment, the effect of the contract, at the least, gave the sugar company a reasonable time after June 30th in which to arbitrarily make shipment, upon appellants' failure to give shipping instructions during that month. That much being true, and the refusal to give the shipping instructions during June being admitted, appellants would be at fault and their consequent liability would follow, unless their failure to furnish shipping directions in June was so caused or induced by the appellees as to relieve them from responsibility for it, or unless the appellees neglected to arbitrarily ship within a reasonable time after the end of June.

[1] Despite the attack made upon them, we think the trial court's findings that neither of these exculpatory conditions was shown to have existed had sufficient support in the evidence. Appellants inadvertently misquote, and, in consequence, likewise misconstrue the contract, in placing the clause "subject to delay" after the words "shipment as wanted within June, 1920," instead of before them, and so in concluding that the delay contemplated was such as might occur in June only; it is evident, we think, that delay in performance either in or after June was in the minds of the contracting parties.

The appellees, through cross-assignment, and with much force, insist that the contract gave them the right, on not getting the prescribed shipping instructions during June, to thereafter make arbitrary shipments but did not impose upon them the duty of doing that without demand from appellants; whether that is so or not, as already stated, they at least had a reasonable time afterwards within which to make that character of shipment, and if they so acted, as we have concluded the court below was justified in finding, there was due performance on their part.

[2] For several reasons, we are also unable to hold, as likewise was the trial court, that the appellees were shown to be responsible for the failure of appellants to give the required shipping instructions, among them that: (1) The terms of the letter of June 12, 1920, from Lewis & Co. to them did not give appellants reasonable ground to believe that the sugar company could not make shipments during June, no statement therein containing any such idea; (2) the letter was a mere circular sent out by the brokers to the trade generally, not to Burleson & Baker specially, and was not in pursuance of agency for or in behalf of the sugar company, but in furtherance by the brokerage firm of their own business; (3) the determined fact below that appellants did not withhold shipping instructions on account of this letter or the brief suspension in the refining of sugar, but evidently were actuated by the decided fall in the price of that commodity.

[3] What has been said disposes of the main questions urged. In the absence of the agreed upon shipping directions, the appellees were not required to allege or prove that they had appropriated refined sugar to the fulfillment of the contract in suit, on or before June 30th; it was sufficient for them to show that they were ready, able, and willing to perform their obligations, which they undisputedly did. 35 Cyc. 168, and note 16; Diamond, etc., Iron Co. v. Ry. Co., 11 Tex. Civ. App. 587, 33 S. W. 987.

Nor, further, were they in that situation interdicted from disposing of their sugars in the performance of other contracts, since, by the undisputed proof, they did not so apply all the sugar they had on hand but could and would have duly filled this order, had the shipping instructions been received.

In other respects, not specifically discussed, we also think the appellees' allegations and proof in respect to shipment within a reasonable time were sufficient to support the judgment rendered.

[4] No question is raised upon the measure of damages applied, except inferentially in the contention that it should have been determined on the basis of prices existing on June 30th, and if it had been, that no damage would have appeared, since there was then no difference between the market and the contract price. There is nothing in this position. The seller having the right to deliver within a reasonable time after June 30th, the rights of the parties were determinable, not as of that date, but as of the date when performance was required or repudiation of the contract took place. Tufts v. Lawrence, 77 Tex. 526, 14 S. W. 165.

It follows, from the conclusions stated, that affirmance should be had. The entry of that order has been directed.

Affirmed.