RANDOLPH, J.
This suit was instituted by defendant in error, as trustee for the Imperial Sugar Company, and such trustee will hereinafter be called plaintiff and the Imperial Sugar Company will hereinafter be called company, in the district court of Ft. Bend county, against Burleson & Baker, a partnership, hereinafter called defendants, to recover for loss on a shipment of 720 bags of sugar, shipped by the company to the defendants under a contract of sale by the company to the defendants, which the defendants refused to receive. Plaintiff was given judgment by the trial court, and on appeal to the Court of Civil Appeals, the judgment was affirmed. 240 S. W. 669.
The contract of sale upon which this action is based is in words as follows :
“Imperial Sugar Company, Sugarland, Texas.
“Broker IBCO*FML
“Sugarland, Texas, April 26, 1920.
“Confirming sale as manufacturers to Burle-son & Baker, Eagle Pass, Texas. 720 bags - bbls. Shipment as wanted. June 1920. Price: Basis 27$ delivered within - days.
“Subject to'delay.
“Terms: Net 30 days, or 2% discount seven days from arrival at destination. Positively no discount will be allowed if remittance is made later than seven days after arrival of car at destination. Buyer must furnish shipping instructions for all the sugar covered by this contract, for shipment within the time specified herein. Failure oh the part of the buyer to so furnish shipping instructions and specifications shall give the seller the right to make arbitrary shipments of the amounts due the buyer herein, at seller’s option, after the expiration of the said specified time.
“This contract is not subject to counter-' mand".
“Seller not liable for nondelivery if caused by strikes, fires, destruction pf refinery, the act of God or any other unavoidable calamity.
“All invoices for sugar covered by this contract are payable at Sugarland, Texas, in New York, St. Louis, Kansas City, Galveston, Houston, or Dallas exchange. Local checks will not be accepted.
“No Guarantee. — Prices shown above are not subject to market changes. v
“General File. — Sellers reserve the right to ship bill of, lading attached.
“Imperial Sugar Company,
“By [Signed] E. P. Cale.”
“Confirmation to Imperial Sugar Company, Sugarland, Texas.
“Contract No. 9333. 4/26/20.
“Burleson & Baker, Eagle Pass, Texas.
“This confirms our to-day’s purchase through Imperial Sugar Company as showp in contract above.
“Burleson & Baker. [Buyer’s Signature.]
“Note. — Return this immediately and prevent delays in shipping.”
The trial court, speaking in its findings of fact, set out the following correspondence by the company, the defendants, and F. M. Lewis & Co., who made the sale of the sugar, as brokers, to defendants, namely:
Western Union Telegram:
“Received at 142 West Commerce St., San Antonio, Texas. C7HO 16 1920 Jun 12 AM 10 36 Sugarland Texas 1005A 12 F. M. Lewis & Co. San Antonio, Tex. 0213. Had very serious breakdown in refinery Impossible advise how long will be closed Advise your trade Imperial Sugar Co.”
“Imperial Sugar Company,
“Sugarland, Texas, June 12, 1920.
“Messrs. F. M. Lewis & Company, San Antonio, Texas — Gentlemen: Confirming our wire *166 of even date, we wish to advise that, owing to a very serious breakdown of one of the main engines in our refinery, it will be at least two weeks, before further shipments of sugar will be made. Please advise the trade that just as soon as operations are resumed their shipments will be rushed all possible, and in the meantime we will keep you posted in the event of any change in our schedule.
“Yours very truly,
“W. T. Eldridge, Jr., Vice President.”
“June 12, 1920.
“E. M. Lewis & Co., Brokers/ San Antonio, Texas — Gentlemen: We are just in receipt of advice from the Imperial Refinery that a serious breakdown in the plant had necessitated their closing down and that it was impossible at this time to state just how long they would be closed. We will advise just as soon as operations are resumed.
“Yours truly,' E. M. Lewis & Co.”
“Messrs. Burleson & Baker, Eagle Pass, Texas — Gentlemen: We have yours of the 13th concerning your 27$ contract with the Imperial Refinery. The refinery has been operating for some time, having been closed down about one week. We do not find in our files any request 'from you for shipment, and therefore we did not press you for shipping directions. We are referring your letter to the Imperial, but inasmuch as they filled 15$ contracts when the market was 27%$, they will very probably insist that such contracts as remain on the books be taken out now at cofitract price. We will let you hear from us when we receive their reply.
“Yours truly, E. M. Lewis & Co.”
“July 19, 1920.
“Messrs. Burleson & Baker, Eagle Pass, Texas — Gentlemen: We inclose you herewith letter from the Imperial Sugar Company, concerning your contract No. 9333. Kindly let us have your instructions.
“Yours truly, P. M. Lewis & Co.”
“Imperial Sugar Company, Sugarland, Texas.
“July 16, 1920.
“E. M. Lewis & Co., San Antonio, Texas— Gentlemen: In reply to your favor of the 15th, in regard to letter from Burleson & Baker, Eagle Pass, Texas, in which they call your attention to our breakdown at the refinery, and request that we cancel their contract for June shipment at 27$. Beg to advise that it is absolutely impossible for us to cancel this contract, as we have bought the raw sugar for delivery and have had it paid for for some time and in storage, and it will be imperative that we make shipment within the next few days. Please secure shipping instructions; otherwise we will be compelled to make arbitrary shipments according to the contract.
“Yours very- truly,
“W. D. Eldridge, Jr., Vice President.”
“Burleson & Baker, Dealers in Grain and Hay.
“Eagle Pass, Texas, July' 22, 1920. ■
“E. M. Lewis & Co., San Antonio, Texas— Gentlemen: We refuse to-furnish shipping instructions for the sugar because, under the circumstances, we ,are not- bound to take it.
“Yours truly, Burleson & Baker,
“Per J. A. Baker.”
“Burleson & Baker, Dealers in Grain and Hay.
“Eagle Pass, Texas, July 22, 1920.
“Imperial Sugar Company, Sugarland, Texas —Gentlemen: We refuse to furnish shipping instructions for the sugar because, under the circumstances, we are not bound to take'it. ■* “Yours truly, Burleson & Baker,
“Per J. A. Baker.”
“E. M. Lewis & Co., Brokers.
“San Antonio, Texas, July 23, 1920.
“Messrs. Burleson & Baker, Eagle Pass, Texas — Gentlemen: We have your favor of July 22d, in which you decline to send shipping instructions covering 720 bags sugar due on your contract with the Imperial. We note you say that under the circumstances you are not bound to take it, and we would like to have you advise just what you mean-by ‘under the circumstances.’' We cannot recall anything in connection with this contract that would nullify it; however, are satisfied that the Imperial Refinery will give due consideration to any reasons you will give for your refusal to accept this sugar in accordance with contract. Your prpmpt reply will be appreciated.
“Yours truly, E. M. Lewis & Op.”
“Imperial Sugar Company.
“Sugarland, Texas, July 30, 1920.
“Messrs. Burleson & Baker, Eagle Pass, Texas — Dear Sirs: We have your letter of the 22d, stating you refuse to furnish shipping instructions for the sugar you have purchased from us, because under the circumstances you are not bound to take it. This contract, dated April 26, for 720 bags of sugar, was made by us in good faith, and we have purchased the raw sugars to cover, and have them on hand at the present time. By reason of your failure to ■ give us shipping instructions, we have no other course than to ship you the sugar, anu accordingly we will make shipment of the 720 bags to you at once, and we will ask that you carry out your portion of the contract by accepting and paying -for this car. This is notice to you that we will look to you for any loss occasioned by your failure to accept and pay for the sugar. /
“Yours very truly,
“W. D. Eldridge, Jr., Vice President.”
There are only two questions presented by the application for writ of error which are of importance to the discussion of the case by us, and these two questions are presented in the assignments in the application, Nos. 4 and 5, upon which the .Supreme Court granted the application, and we overrule the other assignments and proceed to discuss the fifth assignment, as the question there presented naturally comes in sequence.
Assignment No. 5 raises the question that the, judgment of the trial court is unsupported by the evidence, for the reason that the action of the plaintiff and their agents in sending defendants the notice of the breakdown, and in failing to further advise defendant during June with reference to their resuming operations, approximately caused or contributed-to defendants’ action *167 in failing to give shipping instructions during the month of June, and consequently the plaintiffs are not entitled to complain of defendants’ failure to give such shipping instructions, and defendants were not hound to receive the sugar after the month of June.
We do not think it necessary to discuss the question of the failure of defendants to give the company shipping instructions, and whether or not they were led to do so by the company’s failure to notify them of their resumption of * operations, for the reason that, even if their failure to give such instructions was brought about by the company’s conduct in not notifying them of such resumption, they would not be released from-the performance of the contract, and were not thereby authorized to repudiate it. The defendants knew they' had signed a contract in which it was provided that such shipment should be subject to delay; that if such shipping instructions should not be given during the month of June that the company then had the right to make arbitrary shipments at their option after the expiration of the contractual period. In other words, the defendants had the right under the contract to control the time and amount of each shipment during June; after that time the company, at its option, could arbitrarily make shipments. Under the last proposition the question controlling the fulfillment of the contract by the company is: Was the shipment made within a reasonable time, the delay ,in shipment being provided for? This was a question of fact, and was decided adversely to the defendants in both the- trial court and the Court of Civil Appeals on the evidence, and the Supreme Court has no jurisdiction to revise their so holding.
The plaintiff objects to our consideration of the error assigned in the fourth assignment, for the reason that the error as there presented was not presented in thé appeal to the Court of Civil Appeals or in the defendants’ motion for rehearing in that court. The defendants, in their brief in the Court of Civil Appeals and in their motion for rehearing, distinctly attack the judgments rendered as being rendered upon a wrong measure of damages. It is true that in this connection defendants say that the trial court and the Court of Civil Appeals should have applied another measure of damages, which would have been erroneous, if so applied. But the proposition advanced is that such judgment is and was erroneous upon the ground that the court gave the wrong measure of damages, and this objection is not destroyed by their suggesting what they consider the measure of damages to be (Land Co. v. McClelland Bros., 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105; Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Breckenridge v. Claridge, 91 Tex. 535, 44 S. W. 819, 43 L. R. A. 593; Rowe v. Ry. Co. [Tex. Civ. App.] 205 S. W. 731), and we will therefore consider such assignments.
The trial court found that the company had not, prior to the delivery of said sugar to common carrier for defendant, set aside any specified refined sugar with which to fill the contract, but that it had on hand both refined and raw sugar with which to have filled the contract at any time during the contractual period. When they shipped the sugar |o the defendants, and the defendants refused to accept it, they then placed the-'' sugar for sale at 'the nearest and best market for same at San Antonio, Tex., and sold it at 17% cents per pound. This was all the law required of the company, and the measure of their recovery is the difference between the price so realized for the sugar and the price which the defendants had contracted to pay, viz. 27 cents, plus the expense of reselling the sugar. In the case of White v. Matador Land & Cattle Co., 75 Tex. 468, 12 S. W. 867, the rule is recognized to be that:
“Where the vendor retains possession of the property and the purchaser refuses to receive it, the vendor is the agent of the vendee — at least he may elect to so consider himself and proceed to resell the property, or any part thereof, which the vendee refuses to receive, and the latter is chargeable-with any difference in the price agreed to be paid by him and the actual sum realized on a resale which was fairly conducted, if less than the contract price.”
In the case of Waples & Co. v. Overaker & Co., 77 Tex. 11, 13 S. W. 527, 19 Am. St. Rep. 727, Overaker & Co. bought wheat for Waples & Co. under contract. Waples & Co., when the wheat was shipped to them at Sherman, Tex., refused to receive it. On this refusal it' was then shipped to New Orleans and sold by Overaker & Co., after they had tried to sell it at Sherman. The other facts are not necessary to be stated. The Supreme Court in that ease hold:
“There may have been such constructive delivery and existence of such other facts as would have vested title to /the wheat in appellants, ' but they cannot clan under the facts shown, that such an absolute delivery had been made as would defeat the lien of appellees for the purchase money. The conduct of appellants forbids their claim that such a state of, affairs existed. They denied having, any interest in the wheat or liability for its price, and refused to make their possession absolute. Had they done the latter, appellees would have been driven to an action to recover the agreed price.
“As the wheat stood in the cars, appellants refusing to receive and. pay for it, it was the right of appellees to hold it until its price was paid, as they might have done, had the wheat not been shipped to Sherman. Appellants having refused to receive and pay for the wheat, appellees might have retained it, and *168 have recovered the difference between the contract price and the market price at time and place of delivery, or they might have held the property for appellants, - and at their risk, and have recovered the purchase money, which under the agreement would be the aggregate of freight paid and 72% cents per bushel. Ap-pellees, however, were not bound to pursue either of these courses on the refusal of appellants to receive and pay for the wheat, for they had the right to resell and appropriate proceeds on the debt due them, and were not bound to run the risk of the insolvency of appellants, which they would do if they pursued either of the other courses suggested, nor were they bound to assume the risks resulting from fluctuation of markets or the perishable nature of the article. The right of the seller to resell in satisfaction of unpaid purchase money, if title, but not possession, has passed, seems to be well settled, and if there is a contract to sell, and performance be tendered by the seller, the same rule applies.”
To make the difference between the price for which the sugar sold at San Antonio, 17% cents per pound, and the contract price, 27 cents, for the 72,000 pounds, it will be apparent that the plaintiff should have had judgment for a larger sum. than the trial court rendered in his favor. The plaintiff has presented no 'objection to the judgment by way of proper assignment of error, and there is no complaint on his part'before this-court; hence there is no proper occasion for granting him any additional relief. ,
■ We therefore recommend to the honorable Supreme Court that the judgment of the Court of Civil Appeals and trial court be affirmed.
CURETON, C. J.
The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered, as the judgment of the Supreme Court.